STATE of Wisconsin, Plaintiff-Appellant,

v.

AMERICAN TV & APPLIANCE OF MADISON,
INC., Defendant-Respondent-Petitioner.

Supreme Court

*No. 85–2066. Filed August 18, 1989.*

(Also reported in 443 N.W.2d 662.)

HEFFERNAN, CHIEF JUSTICE. We take jurisdiction of the motion filed by the Attorney General, on behalf of the State, asking that we vacate our decision of November 2, 1988, in the captioned case for the alleged reason that a justice of this court, the Honorable William A. Bablitch, who participated in that decision and was among the four-justice majority deciding the case, was disqualified by law. That alleged disqualification is based on the fact that, prior to taking part in the case, Justice Bablitch had purchased merchandise from the respondent, American, some of it through a friend who

worked as salesman and department manager at American, at discounted prices assertedly more favorable than those offered to the general public. On the basis of applicable law and on the facts alleged by the State in its motion and supporting papers, we determine Justice Bablitch's participation in this case was neither impermissible nor improper. As the motion has no merit, legally or factually, we deny it.

Before addressing its merits, we first determine whether the court has jurisdiction to consider the motion at all. In ordinary course, this court has no jurisdiction to reconsider a decision after the 20-day time period for filing a motion for reconsideration set by sec. (Rule) 809.64, Stats., has expired. Here there was no motion for reconsideration. Moreover, in its response to the motion, the respondent has asserted that the court does not have jurisdiction to vacate or modify the decision because the case was properly remitted to the lower court on April 5, 1989.

■

The general rule is that, after remittitur, the Supreme Court has no jurisdiction to vacate or modify its judgment. *Ott v. Boring,* 131 Wis. 472, 110 N.W. 824 (1907). There, a motion was filed after remittitur seeking modification of the court's mandate on the ground of newly-discovered evidence. Denying a companion motion to have the remitted record returned to the court for determination of the modification motion, the court stated:

> [T]he rule has been thoroughly adopted [in Wisconsin] that, when the record upon an appeal has been regularly transmitted to and filed with the court from which it originally came, this court's jurisdiction over the cause, as also to vacate or modify its own judgment, is at an end . . .. *Id.,* 491–92.

Earlier in its opinion the court had qualified that rule: "[I]n the absence of statute making a different provision, the jurisdiction of the appellate court over a given cause terminates whenever regularly, without inadvertence or fraud, it returns the record to the court of general jurisdiction," *Id.,* 487. Explicitly rejecting the practice then followed in New York of allowing post-remittitur recall of a record and reassumption of jurisdiction in order for an appellate court to review its decision, the court held that if post-remittitur jurisdiction is not conferred by statute, the Supreme Court has no jurisdiction over a case once it has been properly remitted to the lower court. *Id.,* 492–93.

Under this rule, which continues to be the rule in Wisconsin, because the record in this case was remitted to the trial court on April 5, 1989, we would not have jurisdiction to consider the motion to vacate our decision were it not for the State's allegation that a member of this court who participated in it was disqualified by law from doing so. Where a justice who participated in a case was disqualified by law, the court's judgment in that case is void. *Case v. Hoffman,* 100 Wis. 314, 72 N.W. 390, *reh'g granted* 74 N.W. 220 (1898). In *Case,* Justice Newman, one of the three justices of the five-member Supreme Court who constituted the majority and the author of the court's opinion, had previously been a circuit judge and had sustained a demurrer in the case in the trial court. His order sustaining the demurrer earlier had been reversed on appeal and, on remand, the case was assigned to another judge. On appeal from judgment for the plaintiff following remand, the Supreme Court reversed, whereupon the respondent moved for rehearing and moved to set aside the judgment on the ground that Justice Newman was disqualified by law. Prior to the

court's consideration of the motion to set aside the judgment, Justice Newman died.

In determining the motion to set aside the judgment, the court applied the disqualification statute which provided: "No judge of an appellate court . . . shall decide or take part in the decision of any cause or matter which shall have been determined by him, while sitting as a judge of any other court, unless there shall not be a quorum without him." Section 2580, R.S. 1878. Acknowledging the certainty that Judge Newman had concluded he was not disqualified and that it was his duty to participate in the decision, the court nevertheless held that Justice Newman was legally disqualified to participate in the case. Regarding the effect of that disqualification, the court said,

> Where, however, it is expressly declared by a constitutional or statutory provision that in a certain specified case a judge shall not sit, or shall not act, or shall take no part in the decision, the almost uniform current of authority is to the effect that any judgment rendered by such judge in such a case is *coram non judice* and void . . . .. The same rule has been applied when the disqualified judge has acted simply as one of a bench composed of several judges, even though the vote of the disqualified judge was not necessary to the decision; and with greater force would the reason of the rule apply when, as in this case, such judge gave the casting vote and decided the cause. *Id.*, 356–57.

Because the judgment was void, the court rejected the option of entering judgment without Justice Newman's vote and ordered the case reargued.

██

Here, if Justice Bablitch were disqualified by law from participating in this case, as the State contends,

the court's decision would be void and, notwithstanding and *Ott* postremittitur rule, we would retain jurisdiction to vacate or modify it. "A judgment or order which is void may be expunged by a court at any time. Such right to expunge a void order or judgment is not limited by statutory requirements for reopening, appealing from, or modifying orders or judgments." *State ex rel. Wall v. Sovinski,* 234 Wis. 336, 342, 291 N.W. 344 (1940). Consequently, the *Ott* rule is inapplicable to the circumstances alleged here.

We therefore conclude that the court has jurisdiction to consider the State's motion and we address it on the merits. Doing so, we determine that neither on the law asserted nor on the facts alleged therein can it be established that Justice Bablitch was disqualified by law from participating in this case. Furthermore, the motion is so devoid of arguable merit as to render further briefing by the parties unnecessary.

The State contends that Justice Bablitch was disqualified under sec. 757.19(2)(g), Stats., because "[h]is receipt of discounts from a litigant greater than that available to the general public on several thousands of dollars in purchases based on an arrangement with an American TV manager certainly would leave his impartiality open to reasonable question." That contention is meritless: neither the statute nor the cases cited by the State mandate Justice Bablitch's disqualification.

The mandatory disqualification statute, sec. 757.19(2), Stats.,[1] establishes seven situations in which a

---

[1] Sec. 757.19(2), Stats., provides:

Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

judge must disqualify himself or herself from an action or proceeding. The first six of these are susceptible of objective determination, that is, without recourse to the judge's state of mind. For example, subsection (a) requires disqualification when a judge is related to any party or counsel to a party or the spouse of any party or counsel within the third degree of kinship. The effect, if any, of such a relationship upon a judge's ability to act impartially in a case is immaterial; the very existence of the relationship creates a disqualification by law. The same type of objective determination applies to the situations described in subsections (b) through (f).

However, the seventh situation requiring disqualification set forth in sec. 757.19(2), Stats., concerns not what exists in the external world subject to objective determination, but what exists in the judge's mind. Subsection (g) requires disqualification "[w]hen a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner." The determination of a basis for disqualification here is subjective.

---

(b) When a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous.

(c) When a judge previously acted as counsel to any party in the same action or proceeding.

(d) When a judge prepared as counsel any legal instrument or paper whose validity or construction is at issue.

(e) When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court.

(f) When a judge has a significant financial or personal interest in the outcome of the matter. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

Section 757.19(2)(g), Stats., mandates a judge's disqualification only when that judge makes a determination that, in fact or in appearance, he or she cannot act in an impartial manner. It does not require disqualification in a situation where one other than the judge objectively believes there is an appearance that the judge is unable to act in an impartial manner; neither does it require disqualification, as the State contends, in a situation in which the judge's impartiality "can reasonably be questioned" by someone other than the judge.

The State does not allege that Justice Bablitch had determined that there was an appearance of his inability to act impartially. Neither does the State allege that Justice Bablitch had determined he could not act in an impartial manner in this case. Indeed, the papers filed with the State's motion show exactly the opposite. After *State of Wisconsin v. American* was decided, the Judicial Commission conducted an investigation into allegations that Justice Bablitch had engaged in judicial misconduct on the basis of facts substantially the same as those presented here. Following the Judicial Commission's dismissal of those misconduct allegations on June 9, 1989, Justice Bablitch sent the parties in this case a letter on June 21, 1989 in which he unequivocally stated that, prior to taking part in the case, he had determined he could act fairly and impartially.

The basis for disqualification under sec. 757.19(2)(g), Stats., is a subjective one. Accordingly, the determination of the existence of a judge's actual or apparent inability to act impartially in a case is for the judge to make. To the extent prior cases cited by the State suggest that a reviewing court, in determining whether a judge should have recused himself, is to independently and objectively determine whether there was an appearance of impartiality, *State v. Asfoor,* 75 Wis.

2d 411, 249 N.W.2d 529 (1977), or whether the judge's impartiality can reasonably be questioned, *State v. Walberg,* 109 Wis. 2d 96, 325 N.W.2d 687 (1982), they are inapplicable to a determination whether a judge was disqualified by sec. 757.19(2)(g), Stats.

The State cites *Asfoor* and *Walberg* as authority for its contention that Justice Bablitch was disqualified by law. However, neither case was decided under a disqualification statute. *Asfoor* applied a provision of the Code of Judicial Ethics that a judge should administer the law free of partiality and the appearance of partiality, SCR 60.01(3), to determine whether a judge should have recused himself, concluding in that case that there was no appearance of partiality by virtue of the judge's comments concerning a criminal defendant's guilt made out of the presence of the jury. Even though the court acknowledged that the judge had no doubt of his ability to preside impartially and that he had acted fairly, it determined that, in some situations, a judge ought to recuse himself, based on an American Bar Association standard set forth in the *Function of the Trial Judge:* "The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever *he believes* his impartiality can reasonably be questioned." (Emphasis supplied.) *Asfoor, supra,* 436. This clearly is a subjective standard, even though the court applied the "impartiality can be questioned" basis objectively, consistent with the Code of Judicial Ethics provision.

In *State v. Walberg, supra,* a defendant sought the judge's recusal because of his conduct toward defense counsel and the judge refused to remove himself. On review, the court applied what it considered the two tests for recusal established in *Asfoor:* a subjective test based on the judge's determination of his or her impartiality

184

and an objective test based on whether the judge's impartiality "can reasonably be questioned." *Walberg, supra,* 106. Although it concluded that the judge's actions during the pretrial motion hearing created the appearance of partiality against the defendant, the court held the judge's failure to recuse himself to constitute harmless error.

The court in *Walberg* did not set forth the standard it used in considering the judge's conduct as requiring recusal but it may reasonably be inferred that it was the Code of Judicial Ethics standard applied in *Asfoor* because the court's determination was explicitly based on the *Asfoor* tests for recusal. It is certain the court was not applying sec. 757.19(2)(g), Stats., the disqualification statute at issue here, which it cited in a footnote as establishing as a standard for disqualification the same two tests for recusal established in *Asfoor.* Indeed, had the court in *Walberg* been applying the disqualification statute, it is inconceivable that it would have held a violation of the mandatory disqualification law to be harmless error.

Because *Asfoor* and *Walberg* determined recusal issues under the Code of Judicial Ethics, they are not applicable here. The Code of Judicial Ethics governs the ethical conduct of judges; it has no effect on their legal qualification or disqualification to act and a judge may be disciplined for conduct that would not have required disqualification under sec. 757.19, Stats. In some instances the Code measures judicial conduct by an objective standard, as in the provision that a judge should administer the law free of "the appearance of partiality," and a judge may be disciplined for violating such standard, even though subjectively the judge had determined there was no ethical violation.

■ The standard by which to measure the basis for disqualification under sec. 757.19(2), Stats., is evident. The situations requiring disqualification under subs. (a) through (f) are objectively measurable. However, in sub. (g), because the basis for disqualification is subjective, requiring the judge's determination of an actual or apparent inability to act impartially, there is no standard to apply on review other than an objective one limited to establishing whether the judge made a determination requiring disqualification.

■ The State suggests no standard to be applied to a judge's determination of actual or apparent inability to act impartially. Indeed, it asserts that, under the statute, the judge's determination is irrelevant; the reviewing court is to determine whether there was an appearance of partiality or whether the judge's impartiality was open to "reasonable question." As stated above, neither such determination would create a disqualification under the statute.

Having determined that Justice Bablitch was not disqualified by law from acting in this case on the basis that his impartiality reasonably can be questioned, we next consider whether the facts alleged in the State's motion support a conclusion that Justice Bablitch made a determination that there was the appearance of his inability to act impartially, thereby requiring his disqualification under sec. 757.19(2)(g), Stats., even though the State's motion does not allege that he did so.

The factual basis of the State's contention that Justice Bablitch was disqualified by law in this case is derived from the letter Justice Bablitch sent to the parties following the Judicial Commission's dismissal of misconduct allegations concerning his dealings with

American. Those dealings, which the State suggestively characterizes as an "arrangement," consisted of Justice Bablitch's having purchased between 1983 and 1987 merchandise of an approximate value of $3,000. He purchased some of that merchandise through a friend, who was a salesman and manager of American's television division. At the time of those purchases, American did not display price tags on its merchandise but had a policy of allowing customers to negotiate a price with the salesperson. At times, the negotiated sale price would be at American's cost or below that cost, but Justice Bablitch made no purchases at prices below cost.

In making purchases of electronic equipment, Justice Bablitch would seek his friend's advice and select from alternatives suggested by his friend. Justice Bablitch told his friend that he did not want any favors and his friend assured him that there were no favors involved and that he would be paying a price available to other members of the general public. When Justice Bablitch made his selection of merchandise, his friend would set a price without negotiating and it was Justice Bablitch's understanding with his friend that the price was above cost and one that was fair to him and to American. Justice Bablitch did not deal exclusively with American; during the relevant time period, he purchased appliances from other retailers.

In his letter, Justice Bablitch informed the parties of facts that were unknown to him at the time he determined he could act impartially in the case but were brought to his attention during the subsequent investigation by the Judicial Commission. The stated purpose of his letter to the parties was to disclose these additional facts "in the interests of fairness." Justice Bablitch stated that he does not believe the additional facts,

187

if known at the time, would have affected his determination that he could act impartially.

Those additional facts are the following: his friend's compensation from American reflects in small part the overall profitability of American through a profit-sharing plan and perhaps a discretionary bonus plan; his friend has no actual equity interest in American; a comparison by the Judicial Commission of his purchases with ten purchases made closest in time to his by ten members of the general public showed that Justice Bablitch received merchandise at a price "less than the average charged to the sample"; American's practice was to sell items at favorable prices to employees and their friends, neighbors, relatives and acquaintances; all of Justice Bablitch's purchases were at a price above American's cost.

We cannot, on the basis of all of these facts, conclude that Justice Bablitch made a determination that would require his disqualification under sec. 757.19(2)(g), Stats. He states in his letter that he had determined that he could act fairly and impartially; the facts do not suggest he made a determination that there was an appearance that he could not do so. These facts do not even support the State's contention that there was, objectively, an appearance of partiality or that Justice Bablitch's impartiality can reasonably be questioned.

Justice Bablitch purchased from American merchandise that had no list price, without any notice of the amount discounted from a hypothetical "list price" and with every reason to believe the price he paid was discounted to no greater extent than prices available to the general public. Regarding the price he paid for the merchandise he purchased, the Judicial Commission's inves-

188

tigation disclosed that it was less than the *average* paid by ten members of the general public in purchases made closest in time to his own. From this it is reasonable to conclude that the price he paid was higher than that paid by at least some of the members of the general public sampled, persons who were not friends of a salesman or department manager.

These undisputed facts completely fail to support the State's contention that "[Justice Bablitch's] receipt of discounts from a litigant greater than that available to the general public on several thousands of dollars in purchases based on an arrangement with an American TV manager certainly would leave his impartiality open to reasonable question." Even under the objective test urged by the State, we are, on these facts, unable to conclude that there was an appearance of Justice Bablitch's inability to act in an impartial manner in this case or that his impartiality is open to reasonable question.

The deficiency of the factual record presented is pointed up by the State's letter to Justice Bablitch, a copy of which was filed together with its motion, asking that he "authorize the Judicial Commission to release the file at this time to the Court so that the Court can consider the record in its entirety." The State intimates thereby that there is material in it which it believes will support its position, material that it is unable to allege as fact.[2]

---

[2] The State has since withdrawn from this position. In a letter filed August 15, 1989, replying to American's response to the motion, the State said, "We feel the Court can decide the motion based on the materials submitted to it." Thus, it acknowledges that the factual exposition in Justice Bablitch's letter to the parties is the complete factual underpinning of its motion.

We do not address the State's assumption that Justice Bablitch has the power to authorize the release of the Judicial Commission's investigative file other than to cite the relevant statute:

> **757.93 Confidentiality of proceedings.** **(1)(a)** All proceedings under ss. 757.81 to 757.99 relating to misconduct or permanent disability prior to the filing of a petition or formal complaint by the commission are confidential unless a judge waives the right to confidentiality in writing to the commission. Any such waiver does not affect the confidentiality of the identity of a person providing information under par. (b).

We have no reason to intimate that a judge's waiver of the personal right of confidentiality under the statute would authorize the Judicial Commission to release its file, whether to the court or to anyone else, or that the Judicial Commission would be required to do so in the event of such a waiver.

In response to the State's suggestion that the court would not have the entire record before it on this motion without the Judicial Commission's investigative file, we are informed that the letter Justice Bablitch wrote to the parties disclosing the additional facts brought to his attention during the investigation was first submitted in draft form to the executive director of the Judicial Commission for review as to its accuracy. Further, the executive director and the attorney who had conducted the investigation made some revisions and additions to it prior to its being sent to the parties. We conclude from this that Justice Bablitch's letter sets forth all of the facts necessary or relevant to our inquiry into this matter, noting that the State now accepts the letter as such.

Even if we were to have the Judicial Commission's investigative file before us, the material in it could not salvage the State's deficient allegations of fact for the reason that the Judicial Commission has no fact-finding authority. The Judicial Commission is charged by statute to investigate and, when it finds probable cause to do so, file a complaint in the Supreme Court and prosecute allegations of judicial misconduct and disability. Secs. 757.81–757.99, Stats. The statutory procedure vests the fact-finding responsibility in judicial misconduct cases in the judicial conduct panel, which is constituted after the Judicial Commission files a formal complaint. After it hears the case, the panel makes findings of fact and conclusions of law and a recommendation for discipline. The Supreme Court then reviews the panel's findings and conclusions, considers its recommendation and imposes discipline as it deems appropriate; it is not statutorily authorized to make findings of fact.

Accordingly, the material in the Judicial Commission's investigative file could be no more than statements, allegations, opinions, physical evidence and other material that has not been subjected to a fact-finding process, nor can be, now that the Judicial Commission has dismissed all allegations of misconduct on which the State bases its charge of disqualification.

We emphasize that no complaint alleging judicial misconduct on Justice Bablitch's part has been filed. Following the Judicial Commission's investigation, all allegations were dismissed. Thus, there is no charge that Justice Bablitch acted unethically.

We are concerned that the Attorney General, acting on behalf of the State, has impugned the integrity of a decision of this court by alleging the disqualification by law of a participating justice in a motion devoid of any basis in fact or law. We also find disturbing the cavalier

statement attributed in the press to Attorney General Hanaway concerning his decision to file the motion: "I treated it as a routine matter and so did our assistant attorneys general."[3]

An attack on the validity of a judgment of the state's highest court on the ground of a member's disqualification by law for an apparent inability to act impartially is not, nor can we conceive of it ever being, a "routine matter." It is obvious from the precedents of this court that the motion is not routine. In *Case v. Hoffman, supra,* referred to above, this court pointed out the far-from-routine implication of an allegation that a judgment of this court is void because of the alleged disqualification of one of its members:

> . . . the question now raised as to Justice Newman's alleged disqualification to participate in the determination of this case is not only a serious one, but also an unwelcome and delicate one to his associates. 100 Wis. 314, 353–54.

There, the motion was appropriate because Justice Newman had acted in the Supreme Court on a case that had been before him as a trial judge. Nonetheless, the court did not consider the motion a routine one.

Unlike *Case,* here, the affront to this court is egregious, for the disqualification allegations are unfounded in law, based on facts heretofore rejected by the Judicial Commission after its thorough investigation as insufficient even to support a finding of probable cause to file a complaint charging judicial misconduct. It is alarming that one who has any regard for the system of justice should assert the invalidity of this court's actions on grounds not reasonably supported by law and fact.

---

[3] *Wisconsin State Journal,* August 10, 1989.

True, the Attorney General lost a case which his office thought should have been won. Indeed, we note that three of the members of the court, including the author of this opinion, dissented from the decision. But disagreeing with the resolution of a case on the merits is a far cry from asserting either unethical conduct or disqualification by law as the basis for charging that the court's action is void.

The court cannot regard this motion to vacate the mandate of this court as mere routine. Unfortunately, the motion's careless employment of the facts and the perfunctory treatment of the law suggests that this most serious matter, an attack upon a member of this court and indeed upon the integrity of the court itself, was treated as mere routine.

For the reasons stated herein, we conclude that the motion must be denied.

*By the Court.*—Motion denied.

ABRAHAMSON and BABLITCH, JJ., took no part.