COURT OF APPEALS
DECISION
DATED AND FILED

October 1, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP2396**

Cir. Ct. No. 2017FA21

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

MARY CARPENTER,

　PETITIONER-RESPONDENT,

V.

TERRY D. CARPENTER,

　RESPONDENT-APPELLANT.

　　　　APPEAL from a judgment of the circuit court for Forest County: LEON D. STENZ, Judge. *Affirmed*.

　　　　Before Stark, P.J., Hruz and Seidl, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM. Terry Carpenter, pro se, appeals the property division portion of a judgment dissolving his marriage to Mary Carpenter. Terry argues that Mary failed to timely complete her financial disclosure statement; the circuit court judge was required to disqualify himself from the divorce proceedings; and the court erroneously exercised its discretion when dividing the marital property. We reject Terry's arguments and affirm the judgment.[1]

## BACKGROUND

¶2　The couple were married in March 1988, and Mary petitioned for divorce in June 2017. Mary and Terry each had two children from previous marriages, and the couple had four children together during their marriage. Mary was a stay-at-home mom for six of the children until 2006, when the family moved to Wisconsin.[2] By the time the divorce petition was filed, all of the children had reached adulthood, and Mary was employed as a manager at a thrift store, earning approximately $1800 per month.

¶3　Mary lived in a house valued at $54,000 that the parties had purchased on a land contract from Mary's mother in 1999. Terry worked as a self-employed carpenter throughout the marriage, but was incarcerated in 2012,

---

[1] We note that Mary has not filed a brief in this matter despite a delinquency notice from this court. By order dated December 12, 2018, we took the appeal under submission with only Terry's brief and warned that we have discretion to summarily reverse a circuit court order on appeal when a respondent fails to file a brief. *See* WIS. STAT. RULE 809.83(2) (2017-18). After review, we have concluded it is appropriate to decide this matter without Mary's brief. We will not summarily reverse on procedural grounds orders that are otherwise correct on their merits.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Terry's two children from his previous marriage lived with their mother in Kentucky.

and will remain in prison until 2027. His gross monthly prison income is $67. The circuit court granted the judgment of divorce and, relevant to this appeal, awarded the marital home to Mary in lieu of maintenance. This appeal follows.

## DISCUSSION

¶4      First, Terry argues that Mary failed to timely file her financial disclosure statement within ninety days of the date the summons was served, as required under WIS. STAT. § 767.127(2). Mary filed her statement on the day of the November 10, 2017 divorce hearing, which was beyond the statutory deadline, and she failed to provide Terry with a copy. Terry, however, fails to develop any argument as to what relief he is entitled to as a result of the late filing. Further, Terry fails to argue that the statement is incomplete or inaccurate, or that he would have had any grounds for objecting to the statement had it been timely filed. Because Terry has failed to show what prejudice he suffered or to what relief he is entitled as a result of Mary's late filing, we will not address his argument any further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (observing that we need not address undeveloped arguments).

¶5      Next, Terry argues that the circuit court judge was required to disqualify himself from the divorce proceedings because he had prepared the above-referenced land contract for Mary's mother while working as an attorney. As an initial matter, it is not clear from the record that it was the judge who drafted the land contract in 1999. Mary stated her belief that it was another attorney, and at the conclusion of the divorce hearing, the judge stated he was "apparently" mistaken, and he had not drafted the land contract. Regardless, even if we were to assume the judge drafted the land contract, we are not persuaded that disqualification was required.

3

¶6      The mandatory disqualification statute, WIS. STAT. § 757.19(2), establishes seven situations in which a judge must disqualify himself or herself from an action or proceeding.  There are six fact-specific situations, the existence of which can be determined objectively, and one general subjective situation which is based solely upon the judge's state of mind.  *See State v. American TV & Appliance*, 151 Wis. 2d 175, 181-82, 443 N.W.2d 662 (1989).  As to the objective situations found in § 757.19(2)(a)-(f), "the very existence of [such a] relationship creates a disqualification by law."  *American TV*, 151 Wis. 2d at 182.  Whether the general subjective situation of § 757.19(2)(g) exists and requires disqualification, however, is based upon the judge's own determination of whether he or she may remain impartial.  *See American TV*, 151 Wis. 2d at 182-83.

¶7      Here, Terry claims three of the objective situations apply. Specifically, Terry asserts disqualification was required under WIS. STAT. § 757.19(2)(b), where a judge is a material witness; § 757.19(2)(c), where "a judge previously acted as counsel to any party in the same action or proceeding"; or § 757.19(2)(d), where "a judge prepared as counsel any legal instrument or paper whose validity or construction is at issue."  None of these situations apply here.

¶8      The circuit court judge is not a material witness because there was no issue during the divorce proceedings regarding the existence of the land contract or its validity.  The judge stated he had no independent knowledge about whether the parties had completed the contract or whether the deed had been transferred.  Additionally, the judge did not previously act as counsel to any party in this action or proceeding.  At most, he drafted the land contract for Mary's mother, and its validity or construction is not at issue.  The judge treated the property as if the parties satisfied the contract and owned the home.  Because none

4

of the cited statutory situations apply, disqualification of the judge was not warranted.

¶9      Finally, Terry contends the circuit court erroneously exercised its discretion when awarding Mary the marital home in lieu of maintenance. Determinations on property division and maintenance awards are committed to the circuit court's discretion. *See Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481 (Ct. App. 1996).  The circuit court properly exercises its discretion if it makes a rational, reasoned decision and applies the correct legal standards to the facts of record. *See id.*

¶10     Upon a judgment of divorce, "the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time … after considering" those factors listed under WIS. STAT. § 767.56(1c).[3]  On

---

[3] WISCONSIN STAT. § 767.56(1c) provides:

> Upon a judgment of annulment, divorce, or legal separation, or in rendering a judgment in an action under s. 767.001(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time … after considering all of the following:
>
> (a) The length of the marriage.
>
> (b) The age and physical and emotional health of the parties.
>
> (c) The division of property made under s. 767.61.
>
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
>
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(continued)

review, the question is whether the circuit court's application of the factors achieves both the support and fairness objectives of maintenance. *Forester v. Forester*, 174 Wis. 2d 78, 84-85, 496 N.W.2d 771 (Ct. App. 1993). "The goal of the support objective of maintenance is to provide the recipient spouse with support at pre-divorce standards." *Fowler v. Fowler*, 158 Wis. 2d 508, 520, 463 N.W.2d 370 (Ct. App. 1990). The goal of the fairness objective is "to ensure a fair and equitable financial arrangement between the parties in each individual case." *King v. King*, 224 Wis. 2d 235, 249, 590 N.W.2d 480 (1999) (citation omitted).

¶11 After considering relevant statutory factors, the circuit court reasonably exercised its discretion by concluding that Mary was entitled to maintenance. The court determined that the equities warranted a "significant" amount of maintenance to Mary given the length of the marriage; the parties'

---

(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(g) The tax consequences to each party.

(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, if the repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(i) The contribution by one party to the education, training or increased earning power of the other.

(j) Such other factors as the court may in each individual case determine to be relevant.

respective ages—Mary was sixty and Terry was fifty-six; and their earning capacities, including what Terry would have been earning had he not been incarcerated. The court recognized that during much of the marriage, Mary provided homemaking and child care services, impeding her ability to develop a career that would have made her more self-sufficient. At the same time, Terry's income alone was sufficient to support his family and purchase real estate.

¶12 The circuit court further noted that while the taxpayers are currently paying for Terry's care, Mary is "struggling" and unable to support herself at a standard of living reasonably comparable to that enjoyed during the marriage. Having concluded that Mary would have been entitled to maintenance of up to half of Terry's potential earnings had he not been incarcerated, the court awarded Mary the couple's home in lieu of that maintenance. Terry thus argues that the court erred by failing to equally divide the marital estate.

¶13 Property division in divorce is governed by WIS. STAT. § 767.61, which establishes a presumption in favor of equal division of marital property. Sec. 767.61(3). "[T]he legislatively prescribed 50 percent presumption in awarding property division is a rebuttable one." *Jasper v. Jasper*, 107 Wis. 2d 59, 68, 318 N.W.2d 792 (1982). A circuit court may deviate from the presumption of equal property division, but only after considering a lengthy and detailed list of statutory factors. *Id.* The statutory list contains twelve enumerated factors, plus a catch-all, and is preceded by an explicit requirement that the court consider all of

the enumerated factors before altering the presumption of equal property division.[4]

There is, however, nothing precluding the court from giving one statutory factor

---

[4] WISCONSIN STAT. § 767.61(3) provides:

The court shall presume that all property not described in sub. (2)(a) [gifts and inheritances] is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of the following:

(a) The length of the marriage.

(b) The property brought to the marriage by each party.

(c) Whether one of the parties has substantial assets not subject to division by the court.

(d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

(e) The age and physical and emotional health of the parties.

(f) The contribution by one party to the education, training or increased earning power of the other.

(g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

(i) The amount and duration of an order under s. 767.56 granting maintenance payments to either party, any order for periodic family support payments under s. 767.531 and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(continued)

greater weight than another, or from concluding that some factors may not be applicable at all. *LeMere v. LeMere*, 2003 WI 67, ¶25, 262 Wis. 2d 426, 663 N.W.2d 789.

¶14     Here, the circuit court considered the applicable statutory factors—many of which overlap with the factors impacting maintenance—and it awarded each party the personal property that was in their possession at that time. The marital home, however, was awarded to Mary "to compensate" for the unavailability of maintenance due to Terry's incarceration. Citing WIS. STAT. § 767.61(3), Terry nevertheless argues that the unequal division of property was punitive and motivated by the court's "impermissible consideration of the conduct underlying his conviction." We are not persuaded.

¶15     WISCONSIN STAT. § 767.61(3) provides, in relevant part, that the circuit court may alter the presumptive equal distribution of property "without regard to marital misconduct" after considering the statutory factors referenced above. *Id.* Although the court recognized that Terry's actions had put him in the position of being unable to provide Mary with the maintenance she needed and had earned, the property division was not ordered to punish Terry for any misconduct. Requiring the sale and division of the marital property would have

(L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(m) Such other factors as the court may in each individual case determine to be relevant.

left Mary without a home, while Terry had no need for the home given his incarceration. In light of the court's consideration of relevant factors, it was reasonable for it to award Mary the marital home in lieu of maintenance. *See* § 767.61(3)(i); *see also* **Herdt v. Herdt**, 152 Wis. 2d 17, 22, 447 N.W.2d 66 (Ct. App. 1989) (concluding that a circuit court may award an unequal division of property in lieu of maintenance).

   *By the Court.*—Judgment affirmed.

   This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.