COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP2170**
**2024AP2329**

Cir. Ct. No. 2020FA41

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

REJANI RAVEENDRAN,

   PETITIONER-RESPONDENT,

WAUSHARA COUNTY CHILD SUPPORT AGENCY,

   RESPONDENT,

 V.

DARWIN DONALD AIROLA, III,

   RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Waushara County: GUY D. DUTCHER, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Darwin Airola, III, appeals two orders entered in Waushara County Circuit Court post-divorce proceedings.[1]  The first order denied Airola's motion for the circuit court judge to recuse from the case.  The second order denied Airola's motions for a waiver of the Waushara County Child Support Agency's service of process fee to initiate contempt proceedings and for modification of child support.  The second order also prohibits Airola from filing future motions related to legal custody and physical placement unless the filing contains "a legitimate averment of circumstances having developed that would facilitate the placement opportunities that exist," and it also prohibits the filing of motions to modify or re-evaluate child support unless they are initiated by the Waushara County Child Support Agency.  For the reasons explained below, we affirm.

¶2      In November 2020, the Waushara County Circuit Court issued an order that determined legal custody and physical placement of the parties' three children in this divorce case.  In August 2021, the court entered an order establishing child support.  In September 2022, a case closure order arising from a related Portage County Child in Need of Protection or Services (CHIPS) proceeding was adopted by the court in this Waushara County divorce case as the

---

[1]  On this court's own motion, these appeals were consolidated for disposition by an order dated May 21, 2026.  *See* WIS. STAT. RULE 809.10(3).

All references to the Wisconsin Statutes are to the 2023-24 version.

controlling order as to custody and placement. That order provided that Airola would have supervised visits on his reasonable requests.

¶3 In the ensuing years, Airola has pursued multiple challenges to the circuit court's orders related to legal custody, physical placement, child support, and the appointment of a guardian ad litem (GAL) for the children, both in the circuit court and this court.

¶4 The following proceedings are relevant to these appeals. On October 25, 2023, the Waushara County Child Support Agency filed a motion for the circuit court to find Airola in contempt for failing to pay child support, and the court issued an order to show cause. On December 11, 2023, the child support agency filed an affidavit for payment of service of process fees, requesting that Airola be required to pay the agency's $60 service fee. The court granted that request, and Airola filed an objection to the fee. On February 20, 2024, Airola filed a motion asking the circuit court judge to recuse from further proceedings.

¶5 The circuit court held a hearing on February 21, 2024. At the outset of the hearing, the child support agency informed the court that Airola was, by then, up to date on his child support obligations, and that the agency was therefore no longer seeking an order finding Airola in contempt.

¶6 Regarding the recusal motion, the circuit court judge made the determination that he would be able to preside over this case fairly and impartially. Following the hearing, the court entered an order denying recusal.

¶7 At the hearing, the court also addressed Airola's objection to the service fee. Airola argued that, because he had not been held in contempt, he should not be charged any fee. The court explained that, even though the agency

was no longer pursuing contempt, it had incurred a service of process fee for the order to show cause when it initiated contempt proceedings based on Airola's failure to pay child support, and that Airola is therefore responsible for that fee.

¶8 On September 4, 2024, Airola moved for return of the service of process fee for the contempt proceedings, and to modify or discontinue child support in the event that the children's mother moved the children out of Wisconsin. On October 23, 2024, the circuit court held a hearing on Airola's pending motions. At the outset of the hearing, the circuit court said:

> I did my best to try and determine exactly what it is we are addressing here today. My current impression is that Mr. Airola has filed a series of motions, beginning with a motion to discontinue child support. Then I think there is a motion to relieve him of the obligations to pay the service fees affiliated with an order to show cause served upon him. There had been a motion filed at some point in this process, requesting that the Court prohibit Ms. Raveendran from removing the children from the country. And I, again, have done my best to try and get my feet underneath me as it relates to what it is we need to address today.

The court then invited Airola to clarify exactly what he wanted the court to address.

¶9 Airola responded that, first, he wanted to address the service fee for the order to show cause hearing. Airola stated his belief that the circuit court had waived the fee. The court explained that it had waived Airola's filing and service fees, but that Airola was still responsible to pay the costs that the Waushara County Child Support Agency incurred to initiate contempt proceedings.[2]

---

[2] The court also noted, again, the difficulty in keeping track of Airola's requests to the court:

(continued)

4

¶10    Next, Airola said that his request to discontinue child support was based on his belief that the children's mother may have been planning to travel with them out of the country. The circuit court explained that Airola had not presented any facts that would support any change in child support. Airola responded that he was specifically asking for an order stating that, if the mother left the state with the children, child support would be discontinued. The court denied that request, explaining that it would not attach any conditions as to child placement to the child support order.

¶11    The circuit court also determined that, based on Airola's "incessant" filings and refusal to comply with the parameters set by the court for Airola to reunite with his children, the court would set limits on Airola's future filings. The court prohibited Airola from "making any filings in this circuit court in Waushara County in this case or any other case pertaining in any way, shape, or form to the custody and placement of the children unless and only if the filing[s] [contain] a legitimate averment of circumstances having developed that would facilitate the placement opportunities that exist." The court also prohibited Airola from filing additional motions for modification or reevaluation of child support, determining that such filings would be considered only if filed by the child support agency. The court issued a written order consistent with its oral rulings. Airola appeals the order denying recusal and the order denying his requests to waive the service fee

It is impossible to keep track of what it is you are asking be done, Mr. Airola…. I think it's in the vicinity of 600 documents that you have filed in this case. It is humanly impossible to keep track of what exactly you are asking be done, what it is all of these orders you are submitting relate to…. I do my best, sir, but … I am a human being, and I have limitations, and it is impossible to understand what you are asking for much of the time, because your filings with this court are incessant.

5

for the contempt proceedings and to modify or discontinue child support, and limiting his future filings.

¶12    Airola contends that the circuit court erred by denying his recusal motion. He contends that the judge was required to recuse under the subjective or objective test for judicial bias. We disagree.

¶13    Under WIS. STAT. § 757.19(2)(g), recusal is required "[w]hen a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner." The determination of impartiality under § 757.19(2)(g) is a subjective one that is left to the judge. *State v. American TV & Appliance*, 151 Wis. 2d 175, 183, 443 N.W.2d 662 (1989). Our review is "limited to establishing whether the judge made a determination requiring disqualification." *Id.* at 186.

¶14    Airola contends that the circuit court judge did not make a determination whether he can act impartially in this case. Rather, Airola contends, the judge denied the recusal motion 21 minutes after it was filed, without considering the contents of the motion. However, that argument is contradicted by the record.

¶15    Airola cites a circuit court email notification that he received 21 minutes after he filed the recusal motion on February 20, 2024, and he argues that the email indicated that the court denied the recusal motion at that time. However, the February 20, 2024 email from the circuit court electronic filing system that Airola cites actually states that Airola's *proposed order* for recusal was *declined*, but that the motion would be considered at the next court hearing. The judge then addressed the contents of the recusal motion at the hearing held on February 21, 2024. The judge said that he had read the motion and asked Airola if there was

6

anything else he would like to add. The judge determined that he could act fairly and impartially in this matter and that there was no basis for him to recuse. The judge's determination of impartiality is dispositive on the subjective prong of the recusal test.

¶16     Airola also contends that the judge made statements demonstrating objective bias. The test for objective bias "asks whether a reasonable person could question the judge's impartiality." *See* *State v. Gudgeon*, 2006 WI App 143, ¶21, 295 Wis. 2d 189, 720 N.W.2d 114. When we review a claim of objective bias, we start from the presumption that a judge is "fair, impartial, and capable of ignoring any biasing influences." *See* *id.*, ¶20. Opinions formed by a judge based on the facts "'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *See* *State v. Rodriguez*, 2006 WI App 163, ¶36, 295 Wis. 2d 801, 722 N.W.2d 136 (quoted source omitted). This analysis requires an inquiry "into whether the circumstances would offer a possible temptation to the average ... judge … not to hold the balance nice, clear and true.'" *Miller v. Carroll*, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542 (quoted source omitted). "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Id.* (quoted source omitted).

¶17     Here, Airola contends that the circuit court judge's comments regarding Airola's religious beliefs and preference for homeschooling his children demonstrated bias. We disagree.

¶18     In his opening appellate brief, Airola cites extended comments by the judge, which we now quote, as allegedly demonstrating the judge's objective bias:

(1) that the court considered the Portage County CHIPS order "and [its] findings that Mr. Airola is entirely reticent and resistant to the children being involved in any therapy or counseling, [that he] is insisting that the children only be home-schooled";

(2) that Airola's communications to the court demonstrated "a misplaced perspective that [he] maintain[s] regarding the propriety of [his] view of the world and to issue admonition to anyone who dare[s] view the world in a manner that [he] find[s] in disagreement with [his] approach to [his] children and how they ought be raised and how [he] ought to interact with them";

(3) that the person approved to supervise Airola's children would have to be "someone who is going to protect the emotional fragility of the children, who is going to ensure that the children are not made subject to what it appears to the Court is [Airola's] continuing view of how the world ought to be, and how it is that anyone who does not adhere to that view of the world, does not adhere to [his] perspective and perception of [himself] falls into any number of enumerated categories that are quite concerning";

(4) that the court wanted Airola to reunify with his children, but that it was "concerned that the process of that reintroduction not be what would be a tidal wave of his viewpoints of the world and the events that have transpired in a manner that would und[o] all of the progress that the children have made through this point in their therapy";

(5) that Airola was to find an individual to supervise his visits with his children who "is not going to be advancing an agenda or potentially advancing an agenda that adheres to how it is [that he] perceive[s] the world [which] lays in front of [him] and lays in front of [his] kids. That is [the court's] suggestion about what it is [the court] would be looking for";

(6) that, in Airola's voluminous filings with the court, he asserted "his ability to see the world in a manner that is superior to others, his desire to [impose] upon his children the wisdom that he believes that he has to offer and his superior ability to parent them and to educate them";

(7) that Airola continued to dispute the past orders, "[a]nd as long as [he] continue[s] to do that and to make statements as [he] continue[s] to make about anyone who disagrees with [his] perception of the world, we are never

8

going to get to a point where anyone will supervise a placement";

(8) regarding Airola's proposed individual to supervise his visits with his children, "[t]he concern here does not have to do with where [he has] chosen to worship or the faith that [he has] chosen to abide by. The concern is that there is an apparent connection between [that individual] and where it is [Airola] attend[s] church, and the necessity for there to be a degree of neutrality and removal from [his] support network, and where it is [he] attend[s] church being part of that support network, and the supervision of the children through what is a very difficult process";

(9) the court's concern that the individual who Airola proposed to supervise the visits "is from [his] church congregation, who adheres to [his] view of the inaccuracies and the injustices that [he] continue[s] to purport have been brought into the picture here," which "is yet another illustration of the fact that [he is] not yet positioned to begin the process of rehabilitating [his] relationship with the children"; and

(10) that the judge wanted Airola to reunify with his children, "but under circumstances where they are attenuated from the perspective that [he] continue[s] to profess as it relates to how it is [that he] will approach interacting with them and parenting them."

¶19     We disagree that the cited comments demonstrate objective bias of any kind, including bias against Airola's religious beliefs or his preference for homeschooling his children. The judge's statement that Airola insisted that his children be homeschooled was a statement of fact from the CHIPS order, not an indication that the judge was biased against Airola because of his preference for homeschooling. Notably, Airola does not dispute the factual accuracy of the statement that he desires that his children be homeschooled.

¶20     The remaining comments indicate that the judge had concerns about Airola's ability to consider any viewpoint other than his own, which the judge considered to be an impediment to Airola taking the necessary steps toward the

9

circumstances under which he could be reunified with his children. The judge explained that it was necessary to find a supervisor for Airola's visits with his children who was neutral and not aligned with Airola's unwillingness to consider other viewpoints relevant to his ability to successfully reunite with his children. Nothing in those comments indicate that the judge was in any way biased against Airola, including any bias based on Airola's religious beliefs. Accordingly, we reject Airola's argument that the circuit court judge was required to recuse himself based on objective bias.

¶21 Airola also contends that the circuit court erred by denying his motion to waive the child support agency's service fee for the order to show cause. Airola contends that the child support agency filed a "fictitious" contempt charge against him that should not have been allowed to proceed to a contempt hearing. However, Airola has not developed an argument, supported by citations to the record or to legal authority, that would support a claim that the motion for contempt was based on false allegations, much less that the court was required to waive the service of process fee. Additionally, Airola contends that the court first said that the fee was waived and then changed course and imposed the fee. However, as the court explained, the court order waiving the filing and service fees that Airola incurred for his own filings did not provide that Airola would not be required to pay the costs incurred by the child support agency to initiate

contempt proceedings.[3]  Accordingly, we discern no basis to disturb the order denying Airola's request to waive the service fee.

¶22    Airola also contends that the circuit court should have made any further child support dependent on the following condition: that the children's mother keep the children in Wisconsin.[4]  He cites the court's January 3, 2020 temporary order that prohibited the parties from removing the children from the state.  However, Airola does not provide any legal authority for the proposition that the court was required to issue or modify any order to explicitly tie Airola's ongoing child support obligation to the condition that the mother not remove the children from the state.  We reject his argument on that basis.

¶23    Airola also contends that there was no legitimate reason for the circuit court to place limits on his filings related to his access to his children and child support.  Again, however, Airola does not develop a legal argument, with citations to the record and supporting authority, to establish that the court erred.  Because Airola has not demonstrated any basis for this court to overturn the court's decisions, we reject this argument as well.

---

[3] Airola also cites a circuit court order indicating that Airola's request for return of the service fees was moot because the court had already waived Airola's filing and service fees. However, the court clarified at the show cause hearing that the court did not waive the service of process fee that was incurred by the child support agency in order to initiate contempt proceedings.  Further, all of this occurred under circumstances that Airola had made unreasonably complicated.  The court observed at the October 23, 2024 hearing that it was difficult for the court to keep track of the numerous motions and proposed orders Airola filed.

[4] The heading for this argument states that the circuit court erred by allowing the mother to remove the children from Wisconsin.  However, as Airola recognizes in the course of his argument, the order that is the subject of this appeal did not authorize the mother to remove the children from Wisconsin, and the issue in this appeal is the court's order denying Airola's request to make child support contingent on the mother keeping the children in Wisconsin.

11

¶24    To the extent that Airola intends to make other arguments that are not addressed in this opinion, we deem those arguments outside the scope of this appeal—which is limited to the specific issues decided in the two orders appealed, as explained above—or insufficiently developed to warrant a response, or both.

*By the Court.*—Orders affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.