IN RE the MARRIAGE OF Kathryn M.A.
MURRAY, Petitioner-Respondent,

v.

Charles L. MURRAY, Respondent-Appellant.

Court of Appeals

*No. 84–2518. Submitted on briefs October 18, 1985.—
Decided January 15, 1986.*
(Also reported in 383 N.W.2d 904.)

For the respondent-appellant, briefs were filed by *Terry Evan Williams* of Williams Bay.

For the petitioner-respondent, a brief was filed by *David A. Danz,* district attorney, and *Phillip A. Koss,* assistant district attorney.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Charles L. Murray appeals from the findings and judgment of contempt and warrant of commitment for failure to pay his child support obligation in the amount of $600 per month. Murray contends that he was denied his right to a fair hearing because the trial court was prejudiced against him. Based upon the record before us, we conclude that the trial court evidenced a lack of impartiality during the contempt hearing. We therefore exercise our discretion under sec. 752.35, Stats., and reverse in the interests of justice.

On June 29, 1984, a contempt hearing was held before the trial court because Murray was in arrears in his child support payments in the amount of $8,090. Murray testified that he was unemployed, was receiving general assistance and food stamps, was seeking employment, and was working several days per week on a "workfare" program. Murray further testified that he was an alcoholic, a former paranoid schizophrenic, and a former manic depressive.

The trial court found that Murray's failure to make the required payments "was willfull and with the intent to avoid payment, said obligor having the ability to meet said obligation, and having failed, without valid excuse, to make the said payments. . . ." Therefore, the trial court found Murray in contempt and ordered him committed to jail for five months unless he purged the contempt by paying the entire arrearage.

Murray's claim of prejudice is based upon the questions and comments of the trial judge during the contempt hearing. Portions of the record show that the following exchanges occurred:

THE COURT: Mr. Murray is $8,090.00 in arrears. We note there was a divorce entered in this court. He was ordered to pay. Has he paid, Mr. Williams?

MR. WILLIAMS: Your Honor, he has not been able to pay that amount in total.

THE COURT: Has he paid anything?

MR. WILLIAMS:˗ He has paid a very small amount. Mr. Murray is in a state of indigency at the present time.

THE COURT: Well, he's going to be in a state of confinement in about ten minutes.

. . . .

THE COURT: Well, do you want to present anything before I send him to jail?

MR. WILLIAMS: Yes, Your Honor, I would like to call as a witness, Mr. Charles Murray.

THE COURT: Okay, Mr. Murray, come up quickly and be sworn.

. . . .

[MR. WILLIAMS]: You had a company, a real estate company and what was the name of that company?

[MR. MURRAY]: Knight Realty, Incorporated.

Q: Does that company still exist?

A: No.

THE COURT: Excuse me, Mr. Williams, what might have been doesn't really interest me.

. . . .

MR. WILLIAMS: Now, Mr. Murray, to backtrack just a bit. Your business—is it true that your business basically went down the drain about the time that the divorce went into effect?

[MR. MURRAY]: That's correct.

THE COURT: Did your children quit eating at that time, or what happened to them?

. . . .

[MR. WILLIAMS]: When you are able to do that is it your intent to support your children and pay your child support?

[MR. MURRAY]:  I will continue to support my children as I have.

THE COURT:  As you have?

[A]:  I will continue to support my children as I have, the materialism I have not been able to provide.

THE COURT:  If somebody doesn't feed them it won't make much difference, material or supernatural or whatever.

. . . .

[MR. WILLIAMS]:  Are you an alcoholic?

[MR. MURRAY]: I am a grateful alcoholic, an admitted sinner. And a—and a former paranoid schizophrenic, and a former manic depressive for the record, and the first psychiatrist has since shot himself, the second psychiatrist is practicing out of state and the last psychiatrist—

THE COURT:  —all very interesting, Mr. Murray, but your children still have to eat.

■

Due process requires that a neutral and detached judge preside over any civil or criminal action or proceeding. *State v. Washington,* 83 Wis. 2d 808, 833, 266 N.W.2d 597, 609 (1978). *See also* sec. 757.19, Stats.;[2]

---

[2] We note sec. 757.19, Stats., because that section deals with disqualification of a judge under circumstances where the judge determines that he or she cannot act in an impartial manner or where it appears that the judge cannot act impartially. However, sec. 757.19 does not govern in this case because a motion for disqualification was not made prior to the hearing, nor was an independent determination made by the judge.

*State v. Asfoor,* 75 Wis. 2d 411, 436, 249 N.W.2d 529, 540 (1977). If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment. *Washington* at 833, 266 N.W.2d at 609. Whether the judge has evidenced a lack of impartiality is a question of law; therefore, our review is *de novo. Cf. State v. Walberg,* 109 Wis. 2d 96, 104–05, 325 N.W.2d 687, 692 (1982).

The record of Murray's contempt hearing evidences the trial judge's lack of impartiality. Beginning with the trial judge's statement at the outset of the hearing that Murray was "going to be in a state of confinement in about ten minutes," the record contains numerous remarks evidencing a predisposition to find Murray in contempt and to confine him.

■

In an appeal to this court, if it appears from the record that the real controversy has not been fully tried or that it is probable that justice has for any reason miscarried, we may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and we may remit the case to the trial court for a new trial. Sec. 752.35, Stats. *See also, e.g., State v. Wyss,* 124 Wis. 2d 681, 734, 370 N.W.2d 745, 770 (1985); *Sentell v. Higby,* 87 Wis. 2d 44, 50, 273 N.W.2d 780, 783 (Ct. App. 1978). We may exercise our power of discretionary reversal under sec. 752.35 without finding the probability of a different result on retrial if we conclude that the real controversy has not been fully tried. *Wyss* at 735, 370 N.W.2d at 770. A situation in which the controversy may not have been fully tried arises when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that

the real controversy was not fully tried. *Id.* at 735, 370 N.W.2d at 770–71.

While we are not here faced with inadmissible evidence, we are nevertheless persuaded that where a judge, acting as the fact finder, evidences a lack of impartiality which clouds the crucial issue, it may be fairly said that the real controversy was not fully tried. In this case, we are convinced that the trial judge's evidenced lack of impartiality so clouded the crucial issue that the real controversy was not fully tried. Therefore, we reverse the finding of contempt and remand for a new hearing.

*By the Court.*—Judgment reversed and cause remanded with directions to quash the warrant and for further proceedings.