STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard L. ROCHELT, Defendant-Appellant.†

Court of Appeals

No. 90-1402-CR. Submitted on briefs January 8, 1991.—Decided October 31, 1991.

(Also reported in 477 N.W.2d 659.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *John M. Brinckman* of *Brinckman & Brinckman* of La Crosse.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Daniel J. O'Brien,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Richard Rochelt appeals from a judgment of conviction for delivery of a controlled substance, sec. 161.41(1)(c)1., Stats. The state relies upon sec. 939.05, Stats., the party to the crime statute, since it presented no evidence that Rochelt directly committed

the crime. The state's theory is that on December 24, 1988, undercover agent Pat Buckley bought cocaine from Rochelt through a bartender, Dale Tuel.

The first issue is whether the trial judge should have recused himself. The second issue is whether the court properly allowed Buckley to testify to statements implicating Rochelt that Tuel, who did not testify, made at the time of sale. Rochelt claims that the testimony denied him his right to confront Tuel. The remaining issues are whether the trial court properly allowed Buckley's supervisor to testify to a conversation he had with Tuel in which Tuel implicated Rochelt, whether the court properly limited Rochelt's cross-examination of a detective, and whether we should grant a new trial in the interest of justice.

We conclude that a letter written by the trial judge before the case was tried raises a reasonable inference that the judge was not impartial but Rochelt failed to show he in fact did not receive a fair trial. We reject Rochelt's hearsay and confrontation contentions. We conclude that the trial court improperly permitted Buckley's supervisor to testify but the error was harmless. We conclude that the trial court did not abuse its discretion when it limited Rochelt's cross-examination of the detective. We decline to order a new trial in the interest of justice. We therefore affirm.

### 1. Due Process Right to Trial by Neutral And Detached Judge

Trial was set for October 31, 1989. On October 17, 1989, the prosecutor's office requested that the trial be rescheduled because, for unstated reasons, the undercover agents would not be available until after November 10, 1989. The trial was reset for December 28, 1989. A week before trial, the defense discovered in the prosecu-

377

tor's file a letter dated October 20, 1989, by the trial judge to instructors at Police Training Services. In the letter, the judge sought release of two undercover officers from classes so that they could testify in several trials, including Rochelt's.

Rochelt moved the trial judge to disqualify himself on grounds that the letter showed an *ex parte* contact with the prosecutor and demonstrated bias and prejudice. The judge declared he was not prejudiced against the defendant and denied the motion. On appeal, Rochelt argues that the trial before the same trial judge denied him his right to due process.

"Due process requires a neutral and detached judge. If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment." *State v. Washington,* 83 Wis. 2d 808, 833, 266 N.W.2d 597, 609 (1978); *see also State v. Walberg,* 109 Wis. 2d 96, 105, 325 N.W.2d 687, 692 (1982) (citing additional cases). "Of course, it is important that the laws should be enforced, and that every violation thereof should be punished. But it is still more important that, as far as possible, every person accused of an offense should have a fair trial before an impartial tribunal." *State ex rel. Getchel v. Bradish,* 95 Wis. 205, 206–07, 70 N.W. 172, 172 (1897).

The *Walberg* court applied two tests to determine whether the defendant's due process right to trial by an impartial and unbiased judge had been violated. *Walberg,* 109 Wis. 2d at 105–06, 325 N.W.2d at 692. The court applied a subjective test based on the judge's own determination of his or her impartiality and an objective test based on whether impartiality can reasonably be questioned.[1] *Id.* The court concluded that the judge's

[1]The applicability of *Walberg* to due process claims of judicial bias is not affected by *State v. American TV & Appliance,*

actions "created the appearance of partiality against the defendant," and the judge's failure to recuse himself was error, but the error was harmless. *Id.* at 109, 325 N.W.2d at 694.

The trial judge's declaration that he was not biased satisfies the subjective test. The objective test remains for us to apply. Whether his impartiality can reasonably be questioned is a question of law for our *de novo* review. *Murray v. Murray,* 128 Wis. 2d 458, 463, 383 N.W.2d 904, 907 (Ct. App. 1986); *In re S.S.K.,* 143 Wis. 2d 603, 618 n.7, 422 N.W.2d 450, 456 n.7 (Ct. App. 1988); *Walberg,* 109 Wis. 2d at 104–05, 325 N.W.2d at 692. We conclude that the trial judge's letter raises a reasonable question about his impartiality.

First, the letter describes the police witnesses as "two individuals, with clean, impeccable records, and with nothing to gain or lose by their testimony," suggesting possible prejudgment of their credibility. Second, it states that individuals of such character are "extremely invaluable," and if the instructors, "make it difficult for these two individuals to continue on with

151 Wis. 2d 175, 443 N.W.2d 662 (1989). The state appealed in *American TV.* The state is not entitled to due process. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive *individuals* of 'liberty' or 'property' interests . . ..") (emphasis added).

The *American TV* court rejected the *Walberg* objective test only as a basis for statutory disqualification of a judge under sec. 757.19(2)(g), Stats. The court stated that *Walberg* and an earlier case, *State v. Asfoor,* 75 Wis. 2d 411, 249 N.W.2d 529 (1977), "are inapplicable to a determination whether a judge was disqualified by sec. 757.19(2)(g)" because "neither case was decided under a disqualification statute." *American TV,* 151 Wis. 2d at 184, 443 N.W.2d at 665.

their professional career [sic], it will be extremely difficult for *us* to recruit other individuals . . .." (Emphasis added.) These statements create an appearance that the judge considered himself part of the prosecution. Third, the letter states: "I am sure *other* drug dealers in town would get a big kick out of knowing" that the law enforcement community itself had impeded the careers of the witnesses. (Emphasis added.) It urges the instructors to reconsider the impact of their decision on the community, the administration of justice, the witnesses, "and whether or not *two more drug dealers* should be put back on the street."[2] (Emphasis added.) These statements create the appearance of possible prejudgment of the defendant's guilt.

In *State v. Hollingsworth,* 160 Wis. 2d 883, 894, 467 N.W.2d 555, 560 (Ct. App. 1991), we said:

A litigant is denied due process only if the judge, in fact, treats him or her unfairly. *Margoles v. Johns,* 660 F.2d 291, 296 (7th Cir. 1981) [(per curiam), *cert. denied,* 455 U.S. 909 (1982)]. A litigant is not deprived of fundamental fairness guaranteed by the constitution either by the appearance of a judge's partiality or by circumstances which might lead one to speculate as to his or her partiality.[3]

---

[2]The "two" persons are Rochelt and the defendant in a companion case.

[3]The *Walberg* court came to a similar conclusion without using that exact test. After concluding that the trial judge had created the appearance of partiality, the *Walberg* court reviewed the record and concluded that the error had been harmless. *Walberg,* 109 Wis. 2d at 109-111, 325 N.W.2d at 694-95. *Compare Arizona v. Fulminante,* 111 S. Ct. 1246, 1264-65 (1991) (harmless error analysis inapplicable to constitutional error resulting from trial by judge who is *not* impartial).

380

■ Our decision in *Hollingsworth* (which we view as an acceptable variant of the harmless error test) requires us to determine whether Rochelt has shown that the trial judge *in fact* treated him unfairly. When ruling on the motion to recuse him, the trial judge said he had not intended in his letter to comment on the case or on the defendant or any matters involved in the case, and that he would give Rochelt the fairest trial possible. Nothing in the record tends to show that the trial judge failed to meet his promise. Rochelt refers to no examples of unfairness. While Rochelt claims various other errors at the trial, as shown later the only one we confirm was harmless. The trial itself satisfies the test of apparent impartiality. No person reading the trial transcript without knowledge of the judge's letter would conclude otherwise.[4]

We conclude that even though the trial judge's letter raises a reasonable question regarding the judge's impartiality, the fact is that Rochelt received a fair trial, and

[4]In the author's view, a trial may appear to be fair in fact, but the parties, their attorneys or an appellate court may wonder whether appearance reflects reality. Much is left in every trial to the discretion of the judge. Discretionary rulings may be made in such a way that they will not be reversed but may have been motivated by conscious or unconscious bias. The problem of appearance versus reality exists in every case, even if the judge avoided an act giving the appearance of partiality. Still, if such an act occurs it may raise or reinforce a doubt never to be dispelled. That is one reason why the author believes "[t]he Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice." ' " *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825 (1986) (citations omitted).

therefore the judge's refusal to recuse himself was harmless error. We must reject Rochelt's contention that he is entitled to a new trial on due process grounds.

## 2. Coconspirator Hearsay Exception

Buckley testified that on December 24, 1988, he went to a bar in La Crosse to buy cocaine from Tuel. Tuel was behind the bar. Tuel told Buckley he could not obtain the amount Buckley wanted. After they agreed on the amount, Tuel walked down the bar some eight to ten feet to a man to whom he referred to as "Ritchie." Tuel returned to Buckley, said there would be "no problem" and told Buckley to wait a minute because the bar was busy. Tuel later returned to Buckley and said that he would get the cocaine. He went back to and spoke with the man he referred to as "Ritchie," then returned to Buckley and told him to order a can of pop and to pay $50 when he paid for it. Tuel later slid the can of pop to Buckley and told him that on its side was a "bindle" of cocaine. Buckley paid the $50 and received the "bindle."

Buckley testified that although he saw Tuel talking to "Ritchie," the bar was crowded and Buckley could not see movements between the two men. From the time that Tuel had a second contact with "Ritchie" and told Buckley to order a can of pop, Tuel did not speak to any other person. Buckley later identified Richard Rochelt as the man to whom Tuel had spoken at the bar and had referred to as "Ritchie." Tuel refused to testify on self-incrimination grounds.

Rochelt contends that the court erred when it allowed Buckley to testify that in response to Buckley's request for cocaine, Tuel went to a man to whom he referred as "Ritchie" and to testify that when Tuel returned to Buckley, Tuel said it would be "no problem." The parties agree that both statements are hearsay

unless, as the state contends, both statements are admissible under the coconspirator exception, sec. 908.01(4)(b)5., Stats. Section 908.01(4), Stats., provides in relevant part:

A statement is not hearsay if:

. . .

(b) The statement is offered against a party and is:

. . . .

5. A statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The coconspirator rule applies only if a *prima facie* case of conspiracy is first proved. *State v. Webster,* 156 Wis. 2d 510, 515, 458 N.W.2d 373, 375 (Ct. App. 1990). The elements of a conspiracy are: "(1) two or more people agree to act for the accomplishment of a criminal purpose; (2) each coconspirator intends to accomplish the criminal purpose; and (3) each coconspirator has an individual stake in the conspiracy." *Id.* at 515 n.2, 458 N.W.2d at 375 n.2. The elements of a conspiracy may be proved by circumstantial evidence. *State v. Dorcey,* 103 Wis. 2d 152, 158, 307 N.W.2d 612, 615 (1981). The *Dorcey* court added: "The conspiracy upon which admissibility depends must be proven independently of the hearsay testimony at issue. 'Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence.' *Glasser v. United States,* 315 U.S. 60, 75 (1942) . . .." *Dorcey,* 103 Wis. 2d at 158, 307 N.W.2d at 615 (citation omitted).

In *Bourjaily v. United States,* 483 U.S. 171, 181 (1987), the Supreme Court described *Glasser* as "superseded." The court said: "We think that there is little doubt that a co-conspirator's statements could them-

selves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.* at 180.[5]

A decision by the United States Supreme Court interpreting a federal rule of evidence is persuasive but does not bind us when we construe that rule's Wisconsin counterpart. *State v. Blalock,* 150 Wis. 2d 688, 702, 442 N.W.2d 514, 519–20 (Ct. App. 1989). The federal coconspirator and Wisconsin exceptions are counterparts.[6] *Blalock* also involved application of the coconspirator exception. In *Blalock* we did not decide the effect of *Bourjaily* on *Dorcey,* since we concluded that sufficient independent evidence existed of a conspiracy and of the defendant's connection with it without taking into account the statements challenged as hearsay.[7] *Blalock,*

[5]*Dorcey* itself may have been "superseded." *Glasser* was decided before the Federal Rules of Evidence were enacted in 1975. The *Bourjaily* court concluded that to the extent that *Glasser* meant that courts could not look to hearsay statements to determine whether a conspiracy had been established, *Glasser* has been superseded by Federal Rule 104(a), which provides: "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . .." As we noted in *State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989), Federal Rule 104(a) is virtually identical to Wisconsin's sec. 901.04(1), Stats. *Dorcey,* however, was decided in 1981, and the Wisconsin Rules of Evidence were effective in 1974. The *Dorcey* court did not discuss the significance of sec. 901.04(1) in connection with the coconspirator exception, sec. 908.01(4)(b)5., Stats.

[6]Federal R. of Evid. 801(d)(2)(E) provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[7]That also happened in *State v. Webster,* 156 Wis. 2d 510, 515–16 n.3, 458 N.W.2d 373, 375 n.3 (Ct. App. 1990), another

150 Wis. 2d at 702, 442 N.W.2d at 519. We reach the same conclusion here.

Without taking into account Tuel's statements challenged as hearsay, a factfinder would reasonably infer from the evidence that he and Rochelt had agreed to accomplish a criminal purpose, delivery of cocaine. The agreement could be inferred from the fact that the terms of delivery were announced and the delivery occurred almost immediately after Tuel had two conversations with Rochelt.

A factfinder would reasonably infer that both Tuel and Rochelt intended to accomplish the delivery of cocaine. Tuel's delivery evinced his intent. That the delivery occurred soon after the conversations with Rochelt is enough to show his intent.

It is reasonable to infer that persons engaged in an activity involving payment of money for a criminal act are motivated by the payment, unless evidence exists of some other reason for their willingness to risk prosecution. The record contains no facts to support an inference that Tuel or Rochelt were motivated by other reasons. It is therefore reasonable to infer that Tuel and Rochelt each had an individual stake in the conspiracy.

Because the state made a *prima facie* case of conspiracy without the use of Tuel's challenged statements, the trial court properly admitted the statements in evidence. *Webster,* 156 Wis. 2d at 517, 458 N.W.2d at 375–76; section 908.01(4)(b)5., Stats.

### 3. Confrontation

case involving the coconspirator problem. The Wisconsin Supreme Court has yet to resolve the recurrent problem whether *Bourjaily,* by superseding *Glasser,* should be treated as having superseded the *Dorcey* application of *Glasser.*

We reject Rochelt's argument that the admission of Tuel's statements denied his constitutional right to confrontation. Tuel's statements were admitted under the coconspirator exception, sec. 908.01(4)(b)5., Stats. That satisfies the confrontation requirement. *Bourjaily,* 483 U.S. at 183–84.

### 4. Admission of Tuel's Statements to Detective Sutton

During his case in chief, Rochelt put in evidence the deposition testimony of two witnesses that several months after December 24, 1988, they heard Tuel say that Rochelt had not been involved. The state unsuccessfully objected to this testimony on hearsay grounds.

Apparently referring to its earlier coconspirator rulings, the trial court said that the state had sought to admit other statements by Tuel, and "what's good for the goose is good for the gander." The state then asked permission to introduce testimony by Detective Sutton to "balance" the deposition testimony. The court allowed both the deposition testimony and Sutton's testimony on grounds that an unspecified hearsay exception applied.

Sutton's "balancing" testimony was that about nine months after December 24, and after Tuel learned that he was to be arrested, Tuel asked Sutton what the charges were. Sutton told Tuel that Rochelt and another man were to be charged with delivery, and that on two occasions Tuel had received cocaine from them and passed it on to undercover agent Buckley. Tuel "indicated [to Sutton] that he had not personally had the cocaine on his person. He didn't consider himself a dealer because he had to go to those individuals for the

cocaine . . .." Sutton testified that Tuel never suggested Rochelt was not involved.

The parties agree that Sutton's testimony is hearsay. The state argues it was properly admitted because it contradicted Tuel's hearsay statements to the deposed witnesses. The state relies on sec. 908.06, Stats., which provides in part: "When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness."

Section 908.06, Stats., does not support the state's position. The testimony of the witnesses on deposition contradicted Tuel's other out-of-court statements but did not attack his credibility. Evidence attacking the credibility of a witness is an attack on the character of the witness for truthfulness or untruthfulness. Section 906.08(1), Stats. The deposed witnesses did not attack Tuel's character.

We reject the state's argument that Tuel's hearsay statement was admissible as a prior inconsistency. The state relies on sec. 908.01(4)(a)1., Stats., which provides that a statement is not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statement and the statement is inconsistent with his testimony. Tuel did not testify.

We hold that the trial court erred when it permitted Sutton to testify regarding his conversation with Tuel.[8]

---

[8]Perhaps Sutton's testimony was admissible under the common law rule of curative admissibility described in *Pruss v. Strube,* 37 Wis. 2d 539, 543–44, 155 N.W.2d 650, 652 (1968). However, the state does not raise that issue, and we lack any guidance whether the rule survives adoption of the Wisconsin Rules of Evidence.

The question remains whether the error was harmless. Buckley's testimony firmly tied Rochelt to the unlawful delivery. We are satisfied that even without Detective Sutton's testimony regarding his later conversation with Tuel, the jury would have convicted Rochelt on the basis of Buckley's testimony.

### 5. Cross-Examination

Rochelt attempted to cross-examine Sutton by inquiring whether he had spoken to Tuel's attorney on two occasions. Replying to the state's objection, Rochelt's counsel stated that had Tuel admitted his participation in deliveries to Buckley, Tuel's confession would have been given to his attorney. In the absence of at least an offer to prove that Tuel's attorney did not request or receive Tuel's confession, we conclude that the trial court did not abuse its discretion when it ruled, as we believe it did, that whether Sutton had spoken to Tuel's attorney was irrelevant.

### 6. New Trial in the Interest of Justice

We possess the power under sec. 752.35, Stats., to grant a new trial in the interest of justice if it appears from the record that the real controversy has not been wholly tried or that it is probable that justice has for any reason miscarried. The record shows that the real controversy was fully tried. For us to conclude that it is probable that justice has miscarried, we must be satisfied that a new trial probably will produce a different result. *Vollmer v. Luety,* 156 Wis. 2d 1, 16, 456 N.W.2d 797, 804 (1990). We are by no means satisfied that such is the case. We therefore decline to exercise our discretionary authority to order a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* The majority concludes that the trial judge's letter of October 20, 1989, to Police Training Services "raises a reasonable question regarding the judge's impartiality." Majority op. at 375. I agree. However, I disagree that Rochelt was required to show that he was, in fact, treated unfairly by the trial judge. Under the objective test, which we must apply, I conclude that the trial judge was required to recuse himself because of the appearance of partiality. I therefore dissent.

The majority relies on our statement in *State v. Hollingsworth,* 160 Wis. 2d 883, 894, 467 N.W.2d 555, 560 (Ct. App. 1991) as follows:

> A litigant is denied due process only if the judge, in fact, treats him or her unfairly. *Margoles v. Johns,* 660 F.2d 291, 296 (7th Cir. 1981). A litigant is not deprived of fundamental fairness guaranteed by the constitution either by the appearance of a judge's partiality or by circumstances which might lead one to speculate as to his or her partiality. *Id.*

In *Hollingsworth,* we did not make our own analysis of the law, but relied solely upon dicta in a federal district court opinion, *Margoles,* adopted *per curiam* by the Seventh Circuit Court of Appeals. The real issue in *Margoles* was whether a collateral attack on a judgment entered five years earlier, on the ground that the judge's impartiality could reasonably be questioned, was sufficient to void the judgment. *See Margoles,* 660 F.2d at 296. This is hardly weighty precedent and cannot overrule the clear authority to the contrary announced in *State v. Walberg,* 109 Wis. 2d 96, 105, 325 N.W.2d 687, 692 (1982).

In *Walberg*, the court stated the controlling principles as to recusal in a criminal case, under the federal constitution. The *Walberg* court quoted from *State v. Asfoor*, 75 Wis. 2d 411, 436, 249 N.W.2d 529, 540 (1977) as follows:

> Although the judge acted fairly in this case, in some situations he should recuse himself. "The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned." ABA Standards, *The Function of the Trial Judge,* sec. 1.7 (1971). The trial judge here had no doubt of his ability to preside impartially in this case. *The question then becomes whether there was any appearance of [partiality].* Code of Judicial Ethics, 36 Wis. 2d 252, 256, Standard 3 (1967). [Emphasis added.]

The latter standard is now expressed in SCR 60.01(3) which provides in part: "A judge should administer the law free of partiality *and the appearance of partiality.*" (Emphasis added.)

Rochelt cannot show that he did not receive a fair trial because of the judge's partiality. Therefore, were we permitted to affirm Rochelt's conviction because the appearance of partiality of the trial judge did not affect the fairness of his trial, I would join the majority. However, the partiality or appearance of partiality of the judge is not subject to a harmless-error analysis. The lack of an impartial judge undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.

I realize that the *Walberg* court made a harmless-error review of the judge's partiality in that case. 109 Wis. 2d at 109, 325 N.W.2d at 694. However, when we deal with federal constitutional rights, we must follow

the decisions of the United States Supreme Court. *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986). In *Arizona v. Fulminante,* 111 S. Ct. 1246, 1265 (1991), the Court noted:

> These [total deprivation of the right to counsel at trial; a judge who is not impartial] are structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial.

The Wisconsin Supreme Court is now in accord. *State v. Dyess,* 124 Wis. 2d 525, 543 n.10, 370 N.W.2d 222, 231 n.10 (1985).

I conclude that we may not apply a harmless-error analysis to the conduct of Rochelt's trial. We must therefore reverse the judgment and remand for a new trial before a different judge.