COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP431-CR**

Cir. Ct. No. **2004CF124**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

GRAHAM L. STOWE,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Graham Stowe, who is subject to an NGI[1] commitment, appeals from an order denying his petition for conditional release. Stowe also

---

[1] NGI is a common abbreviation for "not guilty by reason of mental disease or defect."

appeals from an order denying his motion for postdisposition relief. Before any evidence had been officially presented on Stowe's petition, the circuit court made several statements encouraging Stowe to wait for counsel to be appointed, thus permitting him to make further progress in his treatment, rather than to advance his petition at that time.[2] In doing so, the court strongly suggested that Stowe had not made sufficient progress in treatment, that his chances of release would likely improve if he received additional treatment, that he should take more time to develop his case, and that he would need a witness—other than himself—to explain how his renewed devotion to the Catholic faith has affected his overall dangerousness. Stowe argues on appeal that these comments demonstrate objective bias because they show that the court prejudged Stowe's petition for conditional release.

¶2 We agree that the totality of the circuit court's comments revealed a serious risk of actual bias. The court's opening comments would lead an objective and reasonable person to conclude that if Stowe rejected the court's advice to wait for counsel to be appointed before proceeding with the hearing, then the court had already made up its mind to deny Stowe's petition. Accordingly, we reverse the orders and remand for a new conditional release hearing before a different judge.

## BACKGROUND

¶3 In February of 2004, the State charged Stowe with numerous crimes after he entered his ex-girlfriend's home with a gun and restrained her and some of

---

[2] Although Stowe represented himself at the hearing on his petition for conditional release, counsel was later appointed. Counsel assisted Stowe in filing his motion for postdisposition relief and this appeal.

her family members with handcuffs and zip ties. Stowe eventually entered into a plea agreement with the State, and the circuit court found Stowe not guilty by reason of mental disease or defect of first-degree reckless endangerment, felony intimidation of a victim, bail jumping, and three counts of false imprisonment. The court then committed Stowe to the Department of Health and Family Services for thirty-nine years and six months.

¶4     In 2007, Stowe filed a petition for conditional release, which the circuit court granted. Stowe's conditional release was revoked in 2009, however, after Stowe violated his rules of conditional release. Between 2009 and April 2019, Stowe filed nine petitions for conditional release. Stowe withdrew two of those petitions, and the court, for various reasons, denied the other seven petitions.[3]

¶5     In April of 2019, Stowe filed a new petition for conditional release—the petition at issue in this appeal. The circuit court subsequently appointed Dr. William Schmitt, a clinical psychologist, to examine Stowe. Schmitt, in turn, filed a report with the court discussing whether Stowe should be granted conditional release.

¶6     As relevant to this appeal, Dr. Schmitt opined in his report that "Stowe poses a substantial risk of bodily harm to self or others." Schmitt noted that Stowe had been diagnosed with "Other Specified Personality Disorder with

---

[3] The nature of Stowe's offenses and the procedural history of his case are recounted in several appeals. *See State v. Stowe*, No. 2010AP2458-CR, unpublished slip op. (WI App June 7, 2011); *State v. Stowe*, No. 2011AP2920-CR, unpublished slip op. (WI App Oct. 10, 2012); *State v. Stowe*, No. 2012AP2644-CR, unpublished slip op. (WI App July 30, 2013); *State v. Stowe*, No. 2016AP2367-CR, unpublished slip op. (WI App Dec. 27, 2017); *State v. Stowe*, No. 2017AP1891-CR, unpublished slip op. (WI App June 20, 2019).

Narcissistic and Antisocial features," which was his primary diagnosis at the time of the report. (Formatting altered.) The report further stated that "Stowe has historically been resistant to participating in mental health treatment." The report recognized, however, that Stowe had begun participating in individual counseling in 2019. Although Stowe's participation in counseling was viewed as "significant and positive," the report noted that Stowe's counseling was "in the early stages" and that Stowe would benefit from additional therapy.

¶7 Doctor Schmitt's report also noted that Stowe had said in a recent interview that he had reconnected with his Catholic faith. Stowe viewed his faith as "very helpful," and he stated that "reconnecting with the faith has been beautiful" and "[o]ne of the most important things that will keep [him from being recommitted once he is released]."

¶8 Approximately one week before the hearing on Stowe's petition, Stowe filed a letter with the circuit court stating that he "intend[ed] to proceed pro se, as [he] did in … 2015." Stowe noted that he initially requested that counsel be appointed to represent him, but he had yet to be contacted by the Office of the State Public Defender. Nonetheless, Stowe stated that he had prepared his case and served subpoenas on three witnesses. Stowe also made clear that he "[did] not intend to waive the statutory time restraints for this hearing."[4]

¶9 The circuit court subsequently held a hearing on Stowe's petition. At the beginning of the hearing, the court noted that, due to statutory time

---

[4] *See* WIS. STAT. § 971.17(4)(d) (2021-22) ("The court, without a jury, shall hear the petition within 30 days after the report of the court-appointed examiner is filed with the court, unless the petitioner waives this time limit."). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

constraints, the hearing was scheduled for the same time as other criminal matters and that the hearing likely could not be completed in one day.[5] Before proceeding to the evidentiary portion of the hearing, however, the court paused "to talk a little bit about the issue of counsel and about timing." The court acknowledged that "there's nothing wrong with" Stowe representing himself, but the court recognized that an attorney would likely be "more accurate" and could avoid putting Stowe in the "awkward position" of "advocat[ing] for [him]self." The court later emphasized that

> our whole system by design works better if you have an advocate who can speak for you …. They can say the exact same thing, but it's just sort of the nature of the business that an advocate might have more effect because it doesn't seem to be self-serving or anything else.

¶10 The circuit court suggested that Stowe consider waiting to proceed on his petition until counsel could be appointed. The court explained that if Stowe "continue[d] to progress in the treatment … there's a possibility that [such progress] would work to [his] advantage." The court noted that Stowe had made "good progress" but also that he did not have enough time to get the "full benefit" of treatment or "to convey that benefit":

> [Y]ou read the report. You've made good progress, but you haven't had enough time to really get the full benefit of that, or to at least be able to convey that benefit. And so in that sense time would likely be—if you continue to make the same kind of progress, time would definitely be on your side there.

---

[5] In fairness to the circuit court, to properly provide the context for all of its statements, and to supply the foundation for our analysis that follows, we extensively quote the court's comments.

The court continued to stress that additional time—with additional treatment and the possible assistance of a lawyer—could be beneficial:

> And so I just offer the possible observation to you … that time, especially if you can continue with some of the treatment that you're in now … and hopefully maybe get a lawyer on board so that that could be presented in the way that's most advantageous to you[,] … might be beneficial for you.

¶11 The circuit court also offered Stowe an option to start the hearing but then continue it on a later date, which would allow Stowe to obtain "more information about the benefits of the personal counseling" and "to better develop those other issues":

> We could even get started with [some testimony]. But then have a balance of time. If … you had more time and perhaps even more information about the benefits of the personal counseling and so forth[,] I could see that that would likely accrue to your benefit, from my perspective.
>
> So having said all of that, if you would like to start the hearing[,] we can do that. I doubt that we would be able to finish it today only because of the shortage of time. And so we'd have to schedule the balance of a hearing.
>
> But all of my remarks would go to really the length of that [time]. If I were to try to find a time quickly on the calendar, [the next hearing] would be a little bit like today; you'd be competing with other things. And it also would not necessarily give you a chance to better develop those other issues.

¶12 Before Stowe could respond to the circuit court's comments, the court transitioned into discussing the inherent difficulty of assessing Stowe's Catholic faith and how defendants often point to their faith even though it "may not be deeply felt" and may be "short-lived." The court stated that "trying to … quantify [faith] and fit that into the process we have here is something that probably goes beyond an individual just being able to say[:] 'I've done these

6

things, they're important to me.'" The court nevertheless recognized that a person's faith is an important factor "that can reflect some beneficial changes." The court suggested that Stowe's petition would benefit from taking additional time to find someone connected with Stowe's faith who could provide an outside perspective on Stowe's progress and on how Stowe's faith has benefited him.

¶13 The circuit court then explained Stowe's options for proceeding on his petition, emphasizing again that Stowe should consider taking more time to "develop some of these topics that I've talked about":

> Options that I see are the one is we can get started today, and then we'd have to decide how much time we would have before we would come back, if you would want to use that time to maybe develop some of these topics that I've talked about. Or we can try to come back very promptly, because I think that that's what the statute is asking of the Court, is that this all be done promptly. So I could do that.
>
> I've tried to indicate I'm not sure I think that's beneficial, but that you're an adult and you can make that decision…. [O]r alternatively, if you wanted to have a little bit more time to I hope get counsel on board, or at a minimum, in light of my remarks, perhaps try to develop some of those issues so that they would be beneficial for you at this time, you always have an opportunity to come back for review.

¶14 The circuit court further stated that Stowe could still make progress in his treatment even if the petition was denied, but the court recognized that a denied petition adds a negative part to this process:

> [Y]ou understand that … if it didn't work out this time you still make that progress and so forth.
>
> But you can see from the way this process has worked before that in order for me to disagree with you in terms of your status and your eligibility and your ability to progress, … I have to develop a legal basis for that.
>
> And so really …—again being kind of blunt here—it adds a sort of a negative part to this process that's a necessary

negative part. If, in fact, I believe the legal conclusion requires me to do that.

The court observed that, historically, being denied release was "likely more frustrating [for Stowe], because … [he] get[s] this far, then suddenly it kind of gets pushed back as though that's personal or something like that. It's really not intended to be."

¶15     Following this discussion, the circuit court asked Stowe whether he wanted "some time to get an attorney or to develop this more" or whether he wanted the hearing to be held promptly. Stowe responded that he wanted to proceed with the hearing promptly. Thereafter, the State called Dr. Schmitt to testify, and Stowe, in turn, presented the testimony of three employees from the mental health facility where he was committed. Stowe also read a letter that he previously wrote to his daughter. The letter discussed Stowe's Catholic faith and his renewed devotion to that faith.

¶16     At the end of the hearing, the circuit court denied Stowe's petition in an oral ruling. Of note, the court began by stating that it had "[m]ade a number of remarks at the outset and the court stands by those, that's why I made them." The court then expressly considered several relevant factors provided under WIS. STAT. § 971.14(4)(d), including the nature of Stowe's offenses, his mental history, and his family support. The court recognized that Stowe's participation in treatment was "very positive" but stated his "present mental condition [was] not yet there." Ultimately, the court concluded that "there is clear and convincing evidence that [Stowe] pose[s] a significant risk of bodily harm to [him]self or to others."

¶17     In reaching that conclusion, the circuit court also addressed Stowe's Catholic faith, stating that Stowe's letter "reflected a very genuine change for

8

[Stowe]." Still, the court recognized that the Stowe's renewed faith could not be "easily quantified" in the context of his overall dangerousness. The court again suggested that, in the future, Stowe should find "some resource" that could show how Stowe's faith "affects [his] risk in a tangible way."

¶18 Stowe subsequently filed a motion for postdisposition relief, arguing that "he was denied his right to an impartial tribunal." Specifically, Stowe argued that the circuit court's extensive opening comments would lead a reasonable observer to conclude that the court prejudged Stowe's conditional release petition before the evidentiary hearing.[6]

¶19 The circuit court denied Stowe's postdisposition motion in a written decision and order. In doing so, the court rejected Stowe's argument that it prejudged Stowe's conditional release petition, explaining that its opening remarks sought to inform Stowe about "the dangers of self-representation." The court asserted that it "was simply suggesting how Stowe could benefit from counsel and how counsel could help Stowe present his progress in an advantageous way." The court also stated that its comments were intended to help Stowe, as a pro se litigant, better understand the process.

¶20 Stowe now appeals. Additional facts will be provided as necessary below.

---

[6] Stowe also argued in his motion for postdisposition relief that the circuit court was subjectively biased, that it improperly shifted the burden of persuasion to Stowe, and that Stowe's confinement violates *Foucha v. Louisiana*, 504 U.S. 71 (1992). Stowe has abandoned these arguments on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

**DISCUSSION**

¶21    "A fair trial in a fair tribunal is a basic requirement of due process." *Miller v. Carroll*, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542 (citation omitted); *see also* *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385 ("The right to an impartial judge is fundamental to our notion of due process."). "We presume that a judge has acted fairly, impartially, and without bias." *Miller*, 392 Wis. 2d 49, ¶16. However, "[i]f the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment." *State v. Rochelt*, 165 Wis. 2d 373, 378, 477 N.W.2d 659 (Ct. App. 1991) (citation omitted). Thus, a party may overcome the presumption of impartiality by showing the existence of bias by a preponderance of the evidence. *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. Whether a judge's partiality can reasonably be questioned is a question of law that we review de novo. *Miller*, 392 Wis. 2d 49, ¶15.

¶22    Wisconsin courts employ both subjective and objective approaches for determining whether a defendant's due process right to a trial by an impartial and unbiased judge has been violated. *Herrmann*, 364 Wis. 2d 336, ¶26. Stowe does not contend on appeal that the circuit court was subjectively biased; therefore, only objective bias is at issue.[7]

¶23    In determining whether a judge is objectively biased, "[w]e ask whether there is 'a serious risk of actual bias—based on objective and reasonable

---

[7] Subjective bias exists "whenever [a judge] ha[s] any personal doubts as to whether [he or she] can avoid partiality to one side." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114.

perceptions.'"[8] *Miller*, 392 Wis. 2d 49, ¶24 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). This inquiry requires that we "assess whether 'under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.*, ¶22 (quoting *Caperton*, 556 U.S. at 883-84). When a defendant has shown a serious risk of actual bias, the defendant has rebutted the presumption of impartiality and established a due process violation. *See Herrmann*, 364 Wis. 2d 336, ¶46; *Miller*, 392 Wis. 2d 49, ¶22 ("[A] serious risk of actual bias can objectively rise to the level of a due process violation."). Such a violation, however, is "rare." *See Miller*, 392 Wis. 2d 49, ¶22.

¶24 We have previously held that a judge's statements and conduct suggesting prejudgment can demonstrate a serious risk of actual bias. *See Goodson*, 320 Wis. 2d 166, ¶¶10-13; *State v. Gudgeon*, 2006 WI App 143, ¶¶23, 26, 295 Wis. 2d 189, 720 N.W.2d 114; *see also State v. Stingle*, No. 2019AP491, unpublished slip op. ¶¶36, 45 (WI App July 28, 2020); *State v. Lamb*,

---

[8] Our supreme court's recent decision in *Miller v. Carroll*, 2020 WI 56, ¶25 n.18, 392 Wis. 2d 49, 944 N.W.2d 542, highlights a disagreement within the development of judicial bias jurisprudence over the last two decades. One position "relies on the exact language used by the United States Supreme Court in" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). *Miller*, 392 Wis. 2d 49, ¶¶22, 24-25, 25 n.18 ("We ask whether there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" (citation omitted)). Conversely, the other side advocates for an "appearance of bias" framework that asks whether the "appearance of bias reveals a serious [or great] risk of actual bias." *Id.*, ¶¶41-42, 51 (A.W. Bradley, J., concurring); *see also State v. Herrmann*, 2015 WI 84, 364 Wis. 2d 336, 867 N.W.2d 772 (plurality opinion); *State v. Goodson*, 2009 WI App 107, ¶14, 320 Wis. 2d 166, 771 N.W.2d 385; *Gudgeon*, 295 Wis. 2d 189, ¶23. Under either test, the standard that a party asserting judicial bias must demonstrate to overcome the presumption of impartiality is "a serious risk of actual bias." For that reason, going forward, we will use the language relied on by *Caperton* and *Miller*.

No. 2017AP1430-CR, unpublished slip op. ¶¶11, 14 (WI App Sept. 25, 2018).[9] Indeed, "when [a] judge has prejudged the facts or the outcome of the dispute before her [or him]," the judge "cannot render a decision that comports with due process." *Franklin v. McCaughtry*, 398 F.3d 955, 962 (7th Cir. 2005) (citation omitted); *see also Goodson*, 320 Wis. 2d 166, ¶17. Our decisions in *Gudgeon* and *Goodson* are particularly instructive to this case.

¶25 In *Gudgeon*, before a probation extension hearing had occurred, the circuit court sent a handwritten note to a probation agent stating, "I want [the defendant's] probation extended." *Gudgeon*, 295 Wis. 2d 189, ¶¶3-4. In assessing whether the court was objectively biased, we recognized that the relevant inquiry was "what a reasonable person would conclude from reading the court's notation." *Id.*, ¶26. Viewed objectively, we determined that the note signified the court's personal desire to extend the defendant's probation. *Id.* We therefore concluded that "[t]he ordinary reasonable person would discern a great risk that the [circuit] court … had already made up its mind to extend probation long before the extension hearing took place." *Id.*

¶26 Likewise, in *Goodson*, the circuit court warned the defendant at a sentencing hearing that "[i]f you deviate one inch from these [extended supervision or probation] rules, … you will come back here, and you will be given the maximum, period." *Goodson*, 320 Wis. 2d 166, ¶2. The court later followed through with that promise after the defendant's extended supervision was revoked due to numerous violations. *Id.*, ¶5. The court explained that it was imposing the

---

[9] "[A]n unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel or by a single judge under [WIS. STAT. §] 752.31(2) may be cited for its persuasive value." WIS. STAT. RULE 809.23(3)(b).

12

maximum period of reconfinement "not because that's the sentence I'm giving you today, [but] because that's the agreement you and I had back at the time that you were sentenced." *Id.* (alteration in original). On appeal, we concluded that the court had impermissibly prejudged the defendant's reconfinement sentence because "a reasonable person would interpret the court's statements to mean it made up its mind before the reconfinement hearing." *Id.*, ¶¶10, 13.

¶27 The circuit court's comments in this case might not be quite as unequivocal and direct as the courts' comments in both *Gudgeon* and *Goodson*. Still, we conclude—based on the totality and the circumstances of the court's statements—that a reasonable person would determine that there was a serious risk that the court had prejudged Stowe's petition for conditional release before the evidentiary hearing. The court began the hearing by stating that it "wanted to talk a little bit about the issue of counsel *and about timing*." (Emphasis added.) The court did exactly that; it suggested that Stowe consider the possibility of waiting until counsel was appointed because self-representation is difficult and "it is easier and often more accurate for an advocate to be able to say sometimes the exact same things."

¶28 Although it was appropriate for the circuit court to discuss the difficulties and disadvantages of self-representation, *see State v. Suriano*, 2017 WI 42, ¶23, 374 Wis. 2d 683, 893 N.W.2d 543, the court's focus quickly shifted to discussing the current state of Stowe's progress and the timing of his petition relative to that progress. The court candidly told Stowe that he had not had enough time to "get the full benefit" of his treatment and progress:

> One of the disadvantages you have now is that some of these changes—you read the report. You've made good progress, *but you haven't had enough time to really get the full benefit of that*, or to at least be able to convey that

benefit. And so in that sense time would likely be—*if you continue to make the same kind of progress*, time would definitely be on your side there.[10]

(Emphasis added.) The court repeated this point again when discussing Dr. Schmitt's report, stating that the "gist of it is you've made some progress, but … it's a little early to be able to see what that's going to do for you." The court acknowledged that Schmitt would have to testify, but it also said that it "presume[d Schmitt's testimony] would be consistent" with his report. After Stowe decided to go forward with the hearing, the court again expressed doubt about Stowe's progress being sufficient: "I've tried to give you some insights into my perspective here. Because I have to be, again, very candid, I think there are some more positive things that have occurred. *I don't know if they've matured yet*." (Emphasis added.)

¶29 Further, the circuit court continued to stress that more time and additional treatment might be beneficial: "time, *especially if you can continue with some of the treatment that you're in now* … and hopefully maybe get a lawyer on board so that that could be presented in the way that's most advantageous to you …[,] might be beneficial for you." (Emphasis added.) The court later reiterated these sentiments, stating that "if you had more time and perhaps even more information about the benefits of the personal counseling and so forth[,] I could see that that would likely accrue to your benefit, from my

---

[10] We recognize that the circuit court expressed, in the middle of this statement, that Stowe had not had enough time "to convey [the] benefit [of his progress]," which could arguably tie back to the issue of self-representation. Still, Stowe had not yet presented any evidence, called any of his three witnesses, or argued the substantive merits of his petition. Thus, the court could not have known whether Stowe had enough time to convey the benefits of his progress. This comment therefore reinforces our conclusion that a reasonable person would perceive these comments as a serious risk of prejudgment.

perspective." While encouraging Stowe to take more time before advancing his petition, the court also openly discussed the prospect of Stowe's petition being denied, explaining that the denial of Stowe's petition would add a "negative part to this process" that Stowe would likely find frustrating.

¶30 The circuit court also expressed doubt about Stowe's ability to present his Catholic faith as a relevant factor to the court's inquiry regarding dangerousness. The court acknowledged that faith is sometimes discussed by defendants but "may or may not be deeply felt" and might be "pretty short-lived for them." The court recommended that Stowe find a witness who has observed Stowe's faith and who could describe how Stowe's faith has affected his dangerousness. The court also stated that "trying to be able to quantify that would be helpful. And I don't think it's going to come through normal—a normal process here."

¶31 On top of all of these comments, the circuit court also made several comments indicating that Stowe's petition was not "develop[ed]." The court noted that if Stowe wanted to proceed with the entire hearing promptly, "it … would not necessarily give you a chance to better develop those other issues." The court similarly stated that Stowe could delay the completion of the hearing "if [he] would want to use that time to maybe develop some of these topics that I've talked about." The court also told Stowe that "if you wanted to have a little bit more time to I hope get counsel on board, or at a minimum, in light of my remarks, perhaps try to develop some of those issues *so that they would be beneficial for you at this time*." (Emphasis added.)

¶32 The timing of all of these comments is significant. Neither the State nor Stowe had begun presenting any evidence or arguing the merits of Stowe's

15

petition. The circuit court therefore could not know whether Stowe was prepared to present evidence of his progress and the impact of his faith or whether Stowe had thoroughly developed his arguments.[11] This serious risk of prejudgment is especially disconcerting in the context of this case, given that the State—not Stowe—carried the burden of proof at the conditional release hearing. *See* WIS. STAT. § 971.17(4)(d) ("The court *shall grant the petition unless* it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released." (emphasis added)); *see also* **State v. Randall**, 192 Wis. 2d 800, 808, 532 N.W.2d 94 (1995) (noting the State bears the burden of proof under § 971.17(4)).

¶33 The circuit court's comments at the end of the hearing also support our decision. The court stated at the beginning of its oral ruling that it "[m]ade a number of remarks at the outset and the court stands by those, that's why I made them." The court reiterated its earlier comments about struggling to quantify Stowe's Catholic faith, suggesting that Stowe should look for a witness who could describe "how [Stowe's faith] affects [his] risk in a tangible way." The court also later said:

> So I'm going to deny the petition. I think that there is clear
> and convincing evidence that you pose a significant risk of
> bodily harm to yourself or to others. *But this places me in*

---

[11] In fact, the circumstances seem to suggest that Stowe was prepared to proceed pro se. Stowe had notified the circuit court roughly a week before the hearing that he intended to proceed pro se and that he was prepared to do so. He also successfully subpoenaed three witnesses in support of his petition. In addition to this preparation, Stowe had previously represented himself in his 2015 petition and had observed or participated in at least eight other conditional release hearings before the instant petition. Other than Stowe's general status as a pro se litigant, we can discern no facts suggesting Stowe was not prepared to proceed.

> *a position I was hoping we—my first remarks to kind of avoid.*
>
> I don't—not hoping this is sort of a negative message to you, I would really hope that what you would take away from this is that you've made tremendous progress and that with a consistent record of no discipline reports, of continued treatment, of success in that treatment, that is a sort of development of those insights.

(Emphasis added.) These comments illustrate that the court's opening statements were more than just statements to inform Stowe about the difficulty of self-representation or the conditional release process. Rather, the court's opening statements conveyed substantive concerns and opinions about the merits of Stowe's petition before any evidence had been presented.[12]

¶34     The State contends that the circuit court's opening comments do "not imply that it had made up its mind" but, instead, were in response to Stowe's request to proceed pro se. According to the State, the court's comments sought to ensure Stowe understood the benefits of having counsel and to "help Stowe, as a pro se litigant, understand the process at the conditional release hearing."

¶35     We agree that some of the circuit court's opening comments were genuinely aimed at informing Stowe about the disadvantages of self-representation and about the conditional release process. Nonetheless, the court's discussion repeatedly ventured beyond those issues. Again, the court explicitly said Stowe had not "had enough time to really get the full benefit of [his treatment and

---

[12] At one point, the circuit court also stated in its oral ruling that it "still believe[s] … there remains clear and convincing evidence." Stowe contends that this statement also shows the court prejudged his petition. After reviewing the transcript, however, it is unclear whether the court was referring to a prejudged conclusion on this petition or the court's decisions on Stowe's prior petitions for conditional release. Given the presumption of impartiality, we presume the court was referring to the latter.

progress].”   The court also repeatedly suggested that more *time* would be beneficial for Stowe because he could continue to progress in his treatment, he could find a witness to quantify his Catholic faith in terms of dangerousness, and he could develop more support for his petition.   When finally asking whether Stowe wanted to proceed with the hearing, the court said, “Would you like to have some time to get an attorney *or to develop this more*?”   (Emphasis added.)   Thus, the court’s express statements reflect that it was discussing more than just self-representation; it was doubting the merits of Stowe’s yet-to-be-heard case for conditional release.   Again, the court’s comments at the end of the hearing confirm this interpretation.

¶36   The State also argues that the circuit court’s comments “[do] not demonstrate objective bias in the form of prejudgment” because “courts routinely inform the parties of their initial thoughts at a hearing and ask them to address specific topics before issuing oral decisions.”   The State contends that “[t]he court’s comments here are no more than that.”

¶37   We disagree that the circuit court merely stated some “initial thoughts” for purposes of guiding the parties’ discussion and arguments at the hearing.   The court repeatedly implied that Stowe should address the court’s concerns *before* proceeding on his petition, suggesting that Stowe take more time to progress in his treatment and to “develop” his case.   The court also expressed doubt that Stowe, alone, could present his Catholic faith as a relevant factor in the court’s dangerousness inquiry.

¶38   Even if the circuit court was giving some initial thoughts so as to guide the parties, there is a meaningful difference between giving initial thoughts at the beginning of an oral argument and providing initial thoughts regarding the

18

potential merits of a case at the start of an evidentiary hearing. During an oral argument, the court is not finding facts but, rather, attempting to determine the proper application of the law to facts that have already been presented. Conversely, at an evidentiary hearing, the relevant facts have yet to be determined. In any event, a court cannot make comments demonstrating a serious risk that it has prejudged its decision. *See Goodson*, 320 Wis. 2d 166, ¶¶10-13; *Gudgeon*, 295 Wis. 2d 189, ¶¶23, 26. Here, the court's comments reflect a weighing of the merits of the parties' evidence—especially Stowe's—before any of that evidence had been presented and tested in an evidentiary hearing.

¶39     The State further insists that the circuit court's comments "would not lead a reasonable observer to conclude that there was a high risk of actual bias" because the court never definitively said Stowe could not prevail on his petition. The State points out that the court expressly recognized that it would need "to develop a legal basis" to deny Stowe's petition.

¶40     We agree that the circuit court did not unequivocally state that Stowe could not prevail on his petition. Again, we submit that this case represents a less egregious situation than other cases, such as *Gudgeon* and *Goodson*. Nonetheless, the court's opening remarks—i.e., that Stowe should take more time to progress in his treatment, to "develop" his arguments and his case, and to find a witness to testify about Stowe's faith—made clear that Stowe's conditional release was highly unlikely if he proceeded with a prompt hearing, regardless of the evidence ultimately presented. *See Lamb*, No. 2017AP1430-CR, ¶17 (concluding that a court's intermittent statements about the "possibility" of probation were not enough to dispel the court's comments that such an outcome was highly unlikely). When considered in the aggregate, the court's comments would communicate to a

19

reasonable person that there was a serious risk the court had already made up its mind and prejudged Stowe's petition.

¶41 Finally, the State argues that this case is akin to ***Dane County Department of Human Services v. C.B.***, Nos. 2018AP38 and 2018AP39, unpublished slip op. (WI App Apr. 9, 2018). In ***C.B.***, the circuit court informed the parties that it had been "weighing [WIS. STAT. § 48.426(3)'s dispositional] factors for months, even before … [the] jury trial." ***C.B.***, Nos. 2018AP38 and 2018AP39, ¶23. The Department argued on appeal that this comment "violate[d] its due process rights because the court 'resolved' the dispositional factors 'long before' the dispositional hearing took place." ***Id.***, ¶23. We rejected that argument, concluding that the court's comment "did not amount to a prejudgment of this case" because it did not indicate the court had made up its mind before the dispositional hearing. ***Id.***, ¶28. We further recognized that the court's awareness of the relevant factors did not violate due process, nor did the court's decision at the conclusion of the hearing demonstrate prejudgment in any way. ***Id.***

¶42 The circumstances here are meaningfully different from the circumstances in ***C.B.*** Unlike in ***C.B.***, the circuit court's comments in this case do not suggest that the court merely considered the relevant factors beforehand without making up its mind. Instead, the court's opening comments that Stowe needed additional time for treatment and to further develop his case demonstrate that the court had already made up its mind on Stowe's petition, in the event that Stowe chose to proceed promptly with the hearing. Furthermore, the court's oral ruling also strongly suggests prejudgment because the court expressly reaffirmed its opening comments and stated that its opening comments sought to "avoid" the court having to deny Stowe's petition.

20

¶43　We recognize that nothing in the record suggests the circuit court had any ill intent or motive when making its opening remarks. To the contrary, the court's remarks show a genuine interest in helping Stowe improve his likelihood of conditional release. Still, the court's comments went too far and—in the aggregate—strongly suggested that the court had already made up its mind on Stowe's petition. Based on objective and reasonable perceptions, we conclude that Stowe has rebutted the presumption of impartiality by showing a serious risk of actual bias. We therefore reverse and remand for Stowe to receive a new conditional release hearing before a different judge.[13]

*By the Court.*—Orders reversed and cause remanded with directions.

Not recommended for publication in the official reports.

---

[13] Citing ***Goodson***, Stowe argues that "the remedy [for objective bias] is a new proceeding before a different judge." *See **Goodson***, 320 Wis. 2d 166, ¶18. The State does not raise any argument regarding the proper remedy for objective bias, and it therefore concedes the argument for purposes of this appeal. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.**,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).